UNITED STATES of America
v.
Richard Albert JENKINS.

Cr. No. B–63.

United States District Court,
D. Connecticut.

Oct. 31, 1975.

Thomas F. Maxwell, Jr., Asst. U. S. Atty., Bridgeport, Conn., for plaintiff.

J. Daniel Sagarin, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION ON MOTION TO REDUCE SENTENCE

NEWMAN, District Judge.

This motion under Fed.R.Crim.P. 35 for reduction of an eighteen-year sentence imposed for the crime of armed bank robbery has prompted the Court to explore the relationship between the length of sentences and the duration of time served.

The long sentence was imposed in view of the seriousness of the offense and the defendant's extensive prior record, which includes convictions for two robberies, two larcenies, and a weapons offense. Expressed in terms of sentencing objectives, the sentence was imposed to serve as a general deterrent to others, a specific deterrent to this defendant, and for purposes of incapacitation. While pursuit of these objectives re-

quires a sentence of considerable length, neither they nor any other theories of sentencing indicate what length of sentence is appropriate. In selecting eighteen years, the Court assumed that, even though sentence was imposed pursuant to 18 U.S.C. § 4208(a)(2),[1] one-third of the sentence, six years, was very likely the minimum time defendant would actually serve and that a realistic range of the likely period of actual confinement would be six to nine years.

In considering defendant's motion to reduce, the Court has been concerned that the original sentence may have been unduly influenced by what may appropriately be called the Slovik syndrome[2] —the expectation that a sentence will not be fully carried out. The reference is to the American soldier, Eddie Slovik, sentenced to death for desertion in World War II and executed, though the court martial members who imposed the sentence did not expect that it would be carried out. The phenomenon appears to have resulted in confinements longer than anticipated by sentencing judges especially with sentences of less than five years, since parole board guidelines often specify confinement terms of two and three years, far more than one-third and even one-half of many imposed sentences.[3] See *United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975).

Whether the phenomenon occurs as frequently with long sentences was unclear, since the parole guidelines for armed robbery range from 26 to 65 months, depending upon salient factor scores, a confinement period that would be less than one-third of sentences longer than fifteen years. What needed to be examined was the length of time convicted bank robbers were actually serving after imposition of longer sentences.

Inquiry to the United States Board of Parole elicited two computer printouts prepared by the Bureau of Prisons showing time served by all bank robbers released during 1974. The first printout covered all those released by an initial parole decision, and the second covered all those released by expiration of the full sentence, less good time credit, i. e., mandatory releases. The data disclosed the type of sentence, the sentence length, and the time served prior to parole or mandatory release. The data were analyzed by this Court for sentence lengths of 10, 15, 20, and 25 years. Only regular adult sentences and indeterminate sentences (imposed pursuant to 18 U.S.C. § 4208(a)(2)) were analyzed.[4]

A summary of the data is set forth in the following Table I.

1. The (a)(2) provision was used, and the Parole Board so informed, not to signal a preference for early parole, but simply to provide a safety valve that would permit early release in the event that totally unforeseen circumstances might arise following incarceration.

2. *See* Newman, Foreward, Parole Release Decisionmaking and the Sentencing Process, 84 Yale L.J. 810, 812–13 (1975).

3. Of 15,819 defendants sentenced to imprisonment in 1972, 13,036 (82%) were sentenced to terms of five years or less; 9,926 (58%) were sentenced to terms of three years or less. "Federal Offenders in United States District Courts 1972," Table 3, Administrative Office of the United States Courts (1975).

4. The data do not distinguish, as the parole guidelines formerly did, between armed and unarmed robbery, *see* 39 Fed.Reg. 20031 (1974), but it seems reasonable to assume that most robbers sentenced to ten years or more were convicted of armed robbery, or were determined to have committed the crime with a weapon, even if they were allowed to plead to the larceny count, 18 U.S. C. § 2113(b).

Table I

Federal Prisoners Serving Bank Robbery Sentences Released in 1974
by Initial Parole or Mandatory Release

| Fraction of Sentence Served | Length and Type of Sentence Imposed | | | | | | | | | | Totals | Cumulative Percentages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10 Years Regular a/ | 10 Years (a)(2) b/ | 15 Years Regular | 15 Years (a)(2) | 20 Years Regular | 20 Years (a)(2) | 25 Years Regular | 25 Years (a)(2) | Sub-totals Regular | Sub-totals (a)(2) | Regular & (a)(2) | |
| Over 3/5 - 2/3 | 1(1)c/ | 6(5) | 0 | 2(2) | 0 | 0 | 0 | 0 | 1(1%) | 8(4%) | 9(3%) | 100% |
| Over 1/2 - 3/5 | 6(2) | 11(6) | 9(1) | 6(2) | 2(1) | 1 | 0 | 0 | 17(22%) | 18(9%) | 35(13%) | 97% |
| Over 1/3 - 1/2 | 9 | 27 | 9 | 16 | 4 | 2 | 6 | 0 | 28(36%) | 45(23%) | 73(27%) | 84% |
| Over 1/4 - 1/3 | 9 d/ | 30 | 8 | 17 | 9 | 6 | 2 | 1 | 28(36%) | 54(27%) | 82(30%) | 57% |
| 1/4 or less | 3(1) | 26 | 0 | 24(1) | 0 | 15(1) | 1 | 7 | 4(5%) | 72(37%) | 76(27%) | 27% |
| Totals | 28 | 100 | 26 | 65 | 15 | 24 | 9 | 8 | 78(100%) | 197(100%) | 275(100%) | |

a/ "Regular" sentences mean those imposed upon adults with parole eligibility at the one-third point. 18 U.S.C. § 4202.

b/ "(a)(2)" sentences mean those imposed upon adults with parole eligibility at any time. 18 U.S.C. § 4208(a)(2).

c/ The numbers in parentheses indicate the number of prisoners in each category who were released by mandatory release.

d/ The data disclosed no explanation as to why 31 of those serving regular adult sentences, with parole eligibility at the one-third point, 18 U.S.C. § 4202, were in fact paroled prior to the one-third point. Key-punching errors may be responsible, or it is possible that in some instances the printout report of time served did not include jail time credit. There is also no explanation for the three instances of mandatory release after service of less than 1/4 of the sentence; these are presumably key-punching errors.

As the table indicates, of 275 bank robbers sentenced to long sentences, who were paroled or mandatorily released in 1974, 27% served less than $\frac{1}{4}$ of their sentences, 30% served between $\frac{1}{4}$ and $\frac{1}{3}$ of their sentences, 27% served between $\frac{1}{3}$ and $\frac{1}{2}$ of their sentences, 13% served between $\frac{1}{2}$ and $\frac{3}{5}$ of their sentences, and 3% served between $\frac{3}{5}$ and $\frac{2}{3}$ of their sentences. None served more than $\frac{2}{3}$ of their sentences. Since prisoners sentenced to ten years or more earn ten days of good time credit per month, 18 U.S.C. § 4161, it is not surprising that no prisoner served more than $\frac{2}{3}$ of the sentence imposed. What is interesting to note is how infrequently these prisoners remained in confinement until mandatory release, even with a $\frac{1}{3}$ allowance for good time credit. All but 23 of the 275 prisoners examined were released on parole, and of the 56 sentenced to 20 or 25 years, all but 2 were released on parole. In summary, 84% of the entire group served no more than $\frac{1}{2}$ of their sentences, and 57% served no more than $\frac{1}{3}$ of their sentences.

The data also indicate that bank robbers receiving long sentences under § 4208(a)(2) are likely to be paroled sooner than those serving regular sentences. The benefits of an (a)(2) sentence appear to be more pronounced at the higher sentence ranges. The parole benefits of an (a)(2) sentence for those given long sentences should be contrasted with previously published data indicating that for sentences of five years or less, time served did not vary whether the sentence was imposed under § 4208(a)(2) or was a regular adult sentence. See Pasela et al., "Sentence Indeterminancy and Length of Incarceration," Appx. D, Table XIV, Research Center, National Council on Crime and Delinquency, Davis, California (1974).

This data concerning time actually served on long sentences, taken together with the impact of the Parole Board's guidelines on time served when sentences are less than five years, raise a disturbing possibility. It may well be that defendants sentenced to five years or less are often serving more time than the sentencing judge anticipated when he selected their sentence lengths, while those sentenced to ten years or more are often serving less time than the sentencing judge anticipated when he selected their sentence lengths. The point is that an expectation that a defendant will be released after serving one-third of his sentence will often be unrealistic. Those sentenced to less than five years will often serve more than one-third, and those sentenced to more than ten years will often serve less than one-third.

There were only 11 sentences, like the defendant's in this case, of eighteen years, but the release pattern approximated the results of the data already considered. Ten prisoners received (a)(2) sentences, and all were paroled. Of these, 4 were released between 1 and 5 years, 3 were released between 5 and 6 years, 3 were released between 6 and 8 years, and none served more than 8 years. One prisoner with a regular sentence was mandatorily released after 12 years. The pattern of release at or before the one-third point prevailed.

It should be noted that the 1974 release figures may not fully reflect the impact of the Board's parole guidelines, since 1974 was the first year the guidelines were fully in effect throughout the country. Bank robbers eligible for parole prior to 1974 thus were not considered under the guidelines when their initial parole hearings occurred. However, since these guidelines set a range of confinement time for armed bank robbery at 26 to 65 months, it is unlikely that their application will increase the average confinement time for those serving long sentences. If anything, their use may decrease the average time served, though the guidelines may have the effect of lessening the number of

(a)(2) prisoners released after relatively brief confinement.

■ With respect to this defendant, the figures indicate that he has a good chance of being released just short of the one-third point of his sentence, and that it would be extremely unlikely for him to be confined beyond the halfway point. Confinement for a period ranging from 6 to 9 years was the Court's expectation when sentence was imposed, with substantial time under supervision to follow. Since the currently available data indicate a high likelihood that defendant's confinement prior to release on parole will be somewhat less than the Court anticipated in imposing sentence, the inquiry has disclosed no basis to reduce the sentence. *Cf. Slutsky v. United States, supra.* Nor have any other factors arisen warranting reduction of sentence.

■ Of course, there is no guarantee, either to the defendant or the Court, that parole in his case will in fact be granted within the range reasonably to be predicted from the Board's decisions in other cases. This Court's opinion on this motion is neither a directive to the Board nor the creation of any right for the defendant to obtain parole at any particular time. One problem of the present relationship between sentencing and parole is that a Court intending to cause imprisonment for a substantial length of time (six to nine years) must impose an extremely long sentence (15 to 20 years), thereby creating the risk that a defendant may become one of the few who serve far longer than the average. The Court has specifically considered and accepted that risk in this case. From the defendant's standpoint that risk is simply an unfortunate consequence that may befall any person with an extensive criminal record who elects to commit the crime of armed bank robbery.

The motion to reduce is denied.