UNITED STATES of America, Appellee,

v.

Simon HAWTHORNE, Appellant.

Nos. 75–1549, 75–1727.

United States Court of Appeals,
Third Circuit.

Argued Nov. 13, 1975.

Decided Feb. 2, 1976.

As Amended Feb. 18, 1976.

Robert L. Potter, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U.S. Atty., Charles F. Scarlata, Asst. U.S. Atty., James J. West, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before ALDISERT, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal from the defendant's guilty plea asserts error in the denial of a pre-plea motion and attacks the validity of the sentence imposed. We conclude on the authority of *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), that the defendant's guilty plea forecloses our consideration of his pre-plea motion. However, holding that the district court's sentence was infirm under *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), we vacate and remand for re-sentencing.

### I.

In May, 1973 a federal grand jury in the Western District of Pennsylvania returned a two-count indictment against Simon Hawthorne for violating 21 U.S.C. § 841(a)(1) (distribution of cocaine).[1] Each count of the indictment alleged a separate sale of cocaine. On July 5, 1973, Hawthorne pleaded guilty to Count II of the indictment in return for the Government's promise to move for dismissal of Count I. The district court sentenced Hawthorne to ten years in prison and provided

> that the defendant shall become eligible for parole, under 18 U.S.C.A., Section 4208(a)(2) at such times [sic] as the Board of Parole may determine. In addition to the sentence of imprisonment, a special parole term of five (5) years is hereby imposed pursuant to 21 U.S.C., Section 841.

Upon the Government's motion, the district court dismissed Count I of the indictment.

Thereafter, Hawthorne sought to withdraw his guilty plea. The district court denied the motion. On appeal this Court vacated the district court's order and remanded to permit Hawthorne to unequivocally explain the reasons which he claimed vitiated his plea. *United States v. Hawthorne*, 502 F.2d 1183 (3d Cir. 1974). After remand the district court granted Hawthorne's motion to withdraw his guilty plea.

Hawthorne was arraigned again on November 13, 1974. At that time the district court vacated its earlier order dismissing Count I of the indictment and ordered that count reinstated. Hawthorne then filed a pretrial motion to dismiss Count I of the indictment[2] which was denied.[3] Pursuant to a plea bargain Hawthorne pleaded guilty to Count II of the indictment in exchange for the Government's dual promise to move for dismissal of Count I and to recommend a prison term not in excess of ten (10) years.

Following a three month study period ordered under 18 U.S.C. § 4208(c), the district court, without making reference to

---

1. 21 U.S.C. § 841(a)(1) provides:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
   . . . :

2. Hawthorne agreed that if his motion to dismiss Count I were granted, the Government could nevertheless introduce evidence of the cocaine sale charged in Count I during the trial of Count II.

3. The original district court judge disqualified himself after arraignment. All subsequent proceedings took place before a different district court judge.

any sentencing statute, sentenced Hawthorne on May 9, 1975 to

> Ten (10) years as to Count 2, with an allowance for such time as the defendant has already served. In addition to the sentence of imprisonment, a special parole term of three (3) years is hereby imposed pursuant to 21 U.S.C. Section 841.

Thus, the custodial portion of the 1975 sentence was the same as the one pronounced in 1973, and the special parole term was three years instead of five years. The 1973 sentence provided that appellant would become eligible for parole under § 4208(a)(2) at such time as the Board of Parole may determine; the 1975 sentence contained no similar provision. On the Government's motion, the district court dismissed Count I of the indictment. Hawthorne filed a timely notice of appeal from this sentence.

Thereafter Hawthorne moved under Rule 35, Fed.R.Crim.P., to correct his sentence so as to establish parole eligibility at the discretion of the Parole Board under 18 U.S.C. § 4208(a)(2). Apparently under the belief that Hawthorne's appeal from the sentence deprived it of jurisdiction, the district court issued a memorandum which discussed and justified its sentence without specifically ruling on Hawthorne's motion. Hawthorne filed still another notice of appeal from this memorandum.

This Court has jurisdiction of the appeal from the sentence entered on May 9, 1975 pursuant to 28 U.S.C. § 1291. Since the district court only filed an opinion but did not enter an order denying Hawthorne's Rule 35 motion, there is no final decision as to this motion. However, since all of Hawthorne's arguments are raised by his appeal from the sentence of May 9, 1975, our lack of jurisdiction as to the Rule 35 motion has no bearing upon the issues presented.

## II.

Initially, Hawthorne contends that the guilty plea to Count II was somehow less than voluntary because of the district court's denial of his pre-plea motion to dismiss Count I. Through his pre-plea motion

Hawthorne sought to ascertain the maximum sentence which he faced if he were to proceed to trial on both counts. His uncertainty stemmed from the fact that the plea negotiations of 1973 resulted in the withdrawal of Count I, which Count had now been reinstated. Thus, he faced a two-count indictment and was uncertain as to whether he could be convicted and sentenced on both counts.

The district court denied Hawthorne's motion to dismiss Count I and stated with respect to the maximum sentence possible under the indictment:

> The maximum penalty is what the statute says, unless there are circumstances which may come out before the court that would indicate that he should get less than the maximum. That is all I can tell you.

Hawthorne then participated in new plea negotiations resulting in his guilty plea to Count II and the Government's motion to dismiss Count I.

Initially, we observe that this guilty plea was not conditional, as in *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975). He did not make his guilty plea expressly contingent upon a reservation of the right to challenge any specifics of the pre-plea proceedings. Instead, Hawthorne relies upon the separate bases reflected by the rules enunciated in *Kelsey v. United States*, 484 F.2d 1198 (3d Cir. 1973) and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In response the Government argues that Hawthorne's failure to attack the voluntariness of his guilty plea to Count II precludes this Court from examining the merits of his pre-plea motion.

Hawthorne's reliance upon *Kelsey v. United States, supra*, is totally misplaced. In *Kelsey* this Court held that a guilty plea cannot be said to be voluntarily and understandingly made

> [w]here defense counsel erroneously informs a defendant entering a plea of guilty that sentences . . . could be pyramided into a 75-year maximum,
> . . .

and the district court fails to correct this error. *Id.* at 1198–99. Thus, this Court vacated a guilty plea where the defendant was erroneously informed as to the maximum sentence possible on each of the counts to which he pleaded guilty.

Hawthorne does not allege that he was misinformed as to the consequences of his guilty plea to Count II. Rather, he claims that he could not, with informed consent, plead guilty to Count II without first being informed of the maximum sentence to which he was exposed under both counts if he proceeded to trial. *Kelsey* offers no support for this argument.

■ Nor is Rule 11, Fed.R.Crim.P.,[4] helpful to Hawthorne. Rule 11 only requires that "the plea is made voluntarily with understanding of the nature of the charge and the *consequences of the plea*." (Emphasis added.) Thus, a plea is voluntary when made with knowledge of the penalty that attaches to the offense to which the defendant pleads guilty. Uncertainty as to the possible sentence that might follow from trial of counts to which the defendant has not pleaded guilty cannot invalidate a guilty plea as to that count to which the defendant has pleaded guilty. Thus, neither *Kelsey* nor Rule 11 lend support to Hawthorne's argument that the denial of his pretrial motion is now reviewable.

■ The district court judge properly refused to render an advisory opinion prior to trial as to the dimensions of the sentence which might be imposed on conviction under all counts of the indictment. We find no error in the district court's acceptance of Hawthorne's plea under these circumstances.

The second prong to Hawthorne's argument is based upon *Blackledge v. Perry*, which represents an exception to the consequences of the guilty plea announced in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973):

A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea  .   .   ..

*Blackledge* held that respondent Perry was not barred by his guilty plea to a felony indictment from challenging the constitutionality of that indictment under the Due Process Clause of the Fourteenth Amendment. Perry had been convicted of the misdemeanor of assault with a deadly weapon in the District Court of Northhampton County, North Carolina. He filed a notice of appeal which entitled him under state law to a trial *de novo* in the County Superior Court. After the filing of this appeal but before trial, the prosecutor obtained a felony indictment based upon the same conduct charging Perry with assault with a deadly weapon with intent to kill and inflict serious bodily injury. Perry then pleaded guilty to the felony indictment.

The Supreme Court held that the guilty plea did not foreclose Perry's assertion of his rights under the Due Process Clause of the Fourteenth Amendment. The Court carved out an exception to *Tollett* as follows:

.   .   . Although the underlying claims presented in *Tollett* and the *Brady* trilogy were of constitutional dimensions, none went to the very power of the State to bring the defendant into court to answer the charge brought against him.   .   . In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having

---

**4.** Rule 11, Fed.R.Crim.P., at the time of Hawthorne's resentencing, provided:

 .   .   . The court may refuse to accept a plea of guilty, and shall not accept such plea .   .   . without first addressing the defend-

ant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.

chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the defendant in *Tollett*, Perry is not complaining of 'antecedent constitutional violations' or of a 'deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' [411 U.S. at 266, 267, 93 S.Ct. 1602]. Rather, the right that he asserts and that we today accept is the right not to be hailed into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law.

*Id.*, 417 U.S. at 30–31, 94 S.Ct. at 2103; *see Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *United States v. Sams*, 521 F.2d 421 (3d Cir. 1975).

■ However, Hawthorne cannot avail himself of the rule of *Blackledge*. Hawthorne does not, as in *Blackledge*, seek to attack on due process grounds the count to which he *pleaded guilty*. Rather, he seeks to invalidate his plea on the basis of a count to which he did *not* plead guilty and that was in fact dismissed. *Blackledge* offers no support in this situation.

■ Thus, in the absence of any claim by Hawthorne that his plea to Count II was not voluntarily and intelligently made or that the Government lacked the power to prosecute Count II, he may not "raise independent claims relating to the deprivation

of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson, supra*, 411 U.S. at 267, 93 S.Ct. at 1608. We, therefore, reject Hawthorne's arguments stemming from his pretrial motion to dismiss Count I.[5]

III.

Finally, Hawthorne asserts that the district court's sentence of May 9, 1975 violated his due process rights under *North Carolina v. Pearce, supra*. On August 21, 1973, after Hawthorne's first guilty plea, he was sentenced to prison for ten years with parole eligibility under 18 U.S.C. § 4208(a)(2) and a special parole term of five years.[6] Following Hawthorne's appeal and his second guilty plea, he was sentenced on May 9, 1975 by a different district judge to prison for ten years plus a special parole term of three years. The judgment of sentence did not specify the statute under which parole was to be available. Hawthorne urges that the district court's failure to specify parole eligibility under 18 U.S.C. § 4208(a)(2) in its sentence of May 9, 1975 made that sentence more severe than the earlier sentence imposed on August 21, 1973. Thus Hawthorne claims a deprivation of due process under *North Carolina v. Pearce*.

■ Initially, we are confronted with a threshold question as to the applicability of *North Carolina v. Pearce* in the federal system. *Pearce* presented the question of whether a defendant who had successfully appealed from a state criminal conviction could be sentenced following retrial to a longer total sentence than had been origi-

---

5. Hawthorne's guilty plea to Count II forecloses our consideration of his pre-plea motion and by so doing forecloses our reaching the merits of the two remaining issues which he raises on this appeal, to wit, that

(1) "Where a defendant has formerly pleaded guilty to one count of a two-count indictment and has been sentenced to a term of 10 years' imprisonment and, following a remand on appeal, the lower court has ordered the guilty plea withdrawn, it violates *Pearce* to require the defendant to run the risk of being sentenced to 30 years' imprisonment as a consequence of successfully appealing his first conviction;"

(2) "Under the decision in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the act of selling packages of a narcotic substance on two successive days to the same agent of the United States pursuant to the same vendor-vendee relationship is but a single offense under 21 U.S.C. § 841."

6. On Hawthorne's first appeal we recognized that the special parole portion of his sentence might fall within the proscription of *Roberts v. United States*, 491 F.2d 1236 (3d Cir. 1974). However, we did not reach that issue as it was not properly before us. *United States v. Hawthorne, supra* at 1189 n.22.

nally imposed. The Supreme Court held with respect to re-sentencing following a successful appeal:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. (Footnote omitted.)

395 U.S. at 725–26, 89 S.Ct. at 2080. Nothing in this language restricts this constitutional principle to state cases only. It is axiomatic that it applies to the federal system as well.

However, subsequent Supreme Court cases have revealed that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*

v. Perry, supra, 417 U.S. at 27, 94 S.Ct. at 2102. Thus, the Court did not hold *Pearce* applicable to the possibility of increased sentences in a two-tiered system of criminal adjudication that provided for trials *de novo* in a court of general jurisdiction following conviction in a lower court, *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), or in a criminal system where the jury was entrusted with sentencing, *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

We conclude, as did the Fifth Circuit in *United States v. Floyd*, 519 F.2d 1031 (5th Cir. 1975), that *North Carolina v. Pearce* is applicable to the re-sentencing of a defendant under the circumstances presented here. We acknowledge that Hawthorne was re-sentenced by a different judge who consciously sought to insulate himself from knowledge of the prior proceedings. However, we must recognize that, under the circumstances present here, the re-sentencing judge was potentially "sensitive to the institutional interests that might occasion higher sentences . . . ." *Chaffin v. Stynchcombe*, supra, 412 U.S. at 27, 93 S.Ct. at 1983; *United States v. Floyd*, supra. Furthermore, we note that the defendant in *North Carolina v. Pearce* was sentenced by a different judge of the same court after his appeal.[7] Thus, we hold that the same due process considerations articulated in *North Carolina v. Pearce*, supra, are applicable here.

■ Having determined that *North Carolina v. Pearce* is applicable, we must resolve the question of whether the sentence of May 9, 1975, with parole eligibility governed by 18 U.S.C. § 4202,[8] is "a more severe sentence"[9] than the prior sentence of August 21, 1973, with parole eligibility

---

7. *State v. Pearce*, 268 N.C. 707, 151 S.E.2d 571 (1966); *United States v. Floyd*, supra.

8. Where the judgment of sentence fails to specify the particular statute which is to govern parole eligibility, we deem 18 U.S.C. § 4202 controlling. That section provides:

> A Federal prisoner, . . . serving a definite term . . . of over one hundred and eighty days, whose record shows that he

has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term . . . .

9. The Government suggested at oral argument that we look to the entirety of the May 9, 1975 sentence and not just to the parole disposition in determining whether it was more severe than the earlier sentence. In following this suggestion we would necessarily have to meas-

governed by 18 U.S.C. § 4208(a)(2).[10] Although *Pearce* presented a factual situation in which Pearce's second sentence constituted a longer punishment (in terms of total years) than his first sentence, the Court couched its due process analysis in terms of the severity of the sentence rather than its length. Thus, the fact that Hawthorne was re-sentenced to the same ten year term is not dispositive.

We conclude that Hawthorne's re-sentence to the identical term of ten years with parole governed by 18 U.S.C. § 4202 was a harsher sentence than his previous sentence pursuant to 18 U.S.C. § 4208(a)(2). The earlier sentence of August 21, 1973 provided that "defendant may become eligible for parole at such time as the Board of Parole may determine" under 18 U.S.C. § 4208(a)(2).[11] However, the sentence of May 9, 1975 made no express provision for parole eligibility. As a consequence, Hawthorne would be eligible for parole only "after serving one-third" of his term as provided in 18 U.S.C. § 4202. A sentence that allows for parole at any time that the Parole Board may determine under Section 4208(a)(2) creates the possibility of release from incarceration prior to the time that the one-third point in the sentence has been reached.[12]

Nor is this possibility of parole prior to the completion of one-third of the sentence purely theoretical. Although this Court has as yet not passed upon the issue, we note that two Circuits have interpreted 18 U.S.C. § 4208(a)(2) as requiring the Board of Parole to "give meaningful consideration to parole prior to the time the Board would do so if the prisoner had been sentenced under § 4202." *Garafola v. Benson*, 505 F.2d 1212, 1219 (7th Cir. 1974); *Grasso v. Norton*, 520 F.2d 27, 35 (2d Cir. 1975). Thus, we conclude that the district court's failure to re-sentence Hawthorne under Section 4208(a)(2) with parole "at such time as the Board of Parole may determine" deprived him of the possibility of earlier parole eligibility. Accordingly, the district court's sentence of May 9, 1975 constituted a more severe sentence than the earlier sentence of August 21, 1973 within the meaning of *North Carolina v. Pearce, supra.*

Inasmuch as the record discloses that the district judge at the May 9, 1975 sentencing had no "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original proceeding," *North Carolina v. Pearce, supra*, 395 U.S. at 726, 89 S.Ct. at 2081, Hawthorne could not have his parole

---

ure the severity of a ten year sentence under § 4202 plus a three year special parole term against the severity of a ten year sentence under 18 U.S.C. § 4208(a)(2) plus a five year special parole term. We decline to engage in this process. We interpret *Pearce* as prohibiting the trial court from increasing the severity of either the custodial portion of a sentence or the special parole term following appeal unless based upon affirmative reasons. *See United States v. Forbicetta*, 515 F.2d 342 (5th Cir. 1975).

**10.** 18 U.S.C. § 4208(a)(2) provides in relevant part:

(a) Upon entering a judgment of conviction, . . . for a term exceeding one year, . . . (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

**11.** *Cf. United States v. Forbicetta, supra*, where the Fifth Circuit concluded that resentencing of a defendant to a two and one-half year term with parole under § 4202 was not "more onerous" than the prior sentence of three years with parole governed by § 4208(a)(2). The Fifth Circuit focused on the "tangible" reduction in the term of the sentence and concluded that there was "no likelihood that the inclusion of a special parole provision under Title 18, U.S.C. § 4208(a)(2) would provide earlier release." *Id.* at 344.

**12.** *See Garafola v. Benson*, 505 F.2d 1212, 1216 (7th Cir. 1974), where the Seventh Circuit stated:

It is apparent from the terms of the statutes governing the sentencing of adult offenders, § 4202 as well as § 4208, that at least one major purpose of § 4208(a)(2) is to provide the sentencing judge with the option of allowing the Parole Board to release the prisoner on parole at any time before the one-third point if in its judgment events after the date of sentencing warrant early release.

eligibility determined other than by 18 U.S.C. § 4208(a)(2).

We will vacate the district court's sentence of May 9, 1975 and remand to the district court for re-sentencing consistent with this opinion.