**Edward J. HOLLAND, Petitioner,**

v.

**UNITED STATES of America.**

**Civ. A. No. 75–2712.**

United States District Court,
E. D. Pennsylvania.

Feb. 17, 1977.

Louise O. Knight, Lewisburg, Pa., for petitioner.

Robert N. DeLuca, Philadelphia, Pa., for respondent.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

In this petition under 28 U.S.C. § 2255 to vacate both his plea of guilty to bank robbery and the ensuing sentence, petitioner Edward J. Holland ("Holland") makes three claims. *First,* he asserts that our inquiry at the time of his plea failed to establish a factual basis for the entry of judgment. *Second,* he claims that when he pleaded guilty he did not correctly understand certain policies of the United States Parole Commission which he characterizes as consequences of the plea. *Third,* he alleges that these parole policies will thwart our intentions as the sentencing judge.

During the evening of May 10, 1973, several men came to the Philadelphia home of the Herbert Matlack family and held the family hostage at gunpoint overnight. The next morning one of the men stayed with Mrs. Matlack and the couple's two daughters while the other intruders took Mr. Matlack to the branch of Cayuga Federal Savings and Loan of which he was manager. There, at gunpoint, they compelled bank employees to part with some $23,000. The government contended that Holland was the man who stayed behind to stand guard over Mrs. Matlack and the children.

A grand jury indicted Holland along with William Murphy, Douglas Ehly and Clarence Ford on charges of bank robbery and conspiracy. Because the Matlack family had been held hostage and Mr. Matlack kidnapped, the bank robbery charges included a count under 18 U.S.C. § 2113(e) (hereinafter the "(e) count"), which carries a mandatory minimum term of ten years

and a possible maximum of life imprisonment. Because of severances and mistrials, the events of May 10 and 11, 1973, at the Matlack home and the Cayuga Federal were recounted to four separate juries. Holland was brought to trial with Douglas Ehly, but the jury deadlocked as to Holland and we declared a mistrial.[1] The factual background and the procedural history of the case are set forth in our opinion denying co-defendant Ehly's post trial motions following his second trial, 378 F.Supp. 144, 146–48 (E.D.Pa.), aff'd, 506 F.2d 1050 (3d Cir. 1974), cert. denied, 420 U.S. 994, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975).

Holland was brought to trial again, alone this time. In addition to the evidence adduced at Holland's previous trial, the government produced co-defendant Clarence Ford as a witness against Holland. After the prosecution rested and the defense rested without producing evidence, Holland advised the Court of his desire to enter a plea of guilty to five of the six counts. The government (by way of a plea bargain) had agreed to dismiss the (e) count in return. After a lengthy hearing, which included an extensive colloquy with Holland, and during which a plea was offered, we accepted the plea. Following receipt of a presentence report we sentenced Holland to a study by the Bureau of Prisons pursuant to 18 U.S.C. § 4208(b) (since recodified as 18 U.S.C. § 4205(c)). After receiving the report of the study we imposed final sentence: fifteen years imprisonment. Holland becomes eligible for parole after one-third of his sentence has been served. 18 U.S.C. § 4202 (1970) (now 18 U.S.C. § 4205(a)). This petition attacks that plea proceeding and sentence. For the reasons which follow, we find each of Holland's claims to be without merit and accordingly deny the petition.[2]

## II. Discussion.

### A. The Factual Basis for the Plea

At the time Holland changed his plea (February 6, 1974) Rule 11 of the Federal Rules of Criminal Procedure provided, in part: "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."[3] The usual and favored procedure for compliance with this requirement is a request, made on the record at the time of offering of the plea, that the defendant "describe the conduct that gave rise to the

---

1. Ehly was also granted a mistrial during his joint trial with Holland because of the illness of a juror. Holland elected to continue with eleven jurors, who were unable to agree upon a verdict.

2. No evidentiary hearing was required on the "factual basis" issue because the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (¶ 3). See Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). The "sentencing intent" claim is a factual one, but it may be resolved by the sentencing judge alone, without taking evidence. United States v. Salerno (Silverman), 538 F.2d 1005, 1009, clarified and rehearing denied, 542 F.2d 628 (3d Cir. 1976). The "consequences" claim is purely a legal one, likewise requiring no hearing. Petitioner, represented by able and diligent retained counsel, filed a brief in support of the petition, to which the government responded. At our request, the government filed two supplemental memoranda, to which the petitioner replied. We also heard oral argument on the matter.

3. The Rule by its terms does not expressly forbid acceptance of the plea without a factual basis, but only the later entry of the judgment, which is the sentence. However, in Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the Supreme Court declared that "the sentencing judge must develop, on the record, the factual basis for the plea . . . ." (emphasis in original). And one distinguished commentary describes the Rule 11 formulation merely as an " 'escape-hatch' " permitting the court retrospectively to reject the plea if reading the presentence report, for example, "casts doubt on the existence of a factual basis." 8 Moore's Federal Practice ¶ 11.03[3], at 11–73 to –74 (2d ed. Hall, Waxner & Taylor 1976). See also Irizarry v. United States, 508 F.2d 960, 967–68 (2d Cir. 1974).

Effective Dec. 1, 1975, Rule 11 was amended substantially. With respect to factual basis, it now reads: "(f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

charge." *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).[4] We made such an inquiry, and Holland did not deny his participation in the conspiracy to rob the bank or even in the substantive scheme, but neither did he admit full culpability. That aspect of the colloquy, in pertinent part, went as follows:

THE COURT: Very well. Now we have heard spread upon the record in some detail on a couple of occasions by Mr. Matlack what happened. And you have been here through all the testimony that I have except during the suppression hearing when you were out of the room.

Mr. Holland, weren't you involved in the plan to rob the Cayuga Bank?

Or maybe the question is inartfully drawn.

Will you tell me what your role was with respect to the subject matter of the Indictment, what you in fact did.

THE DEFENDANT: Rather than lie to the Court I would rather not say anything at all, sir. I had a very, very small part.

THE COURT: Well, did you have a part?

THE DEFENDANT: The Court would consider it a part, I assume. So I'd better consider it a part.

(N.T. Change of Plea 20–21).

THE COURT: . . . But the question is whether or not there is sufficient for me to make a determination that there is a factual basis for your plea. I suppose I could on the basis of evidence that I heard. But I think it would be preferable if you detail what you say your role is and then I can make a judgment whether that is sufficient.

THE DEFENDANT: I repeat myself, Your Honor. I have too much respect for the Court to state anything that wouldn't be true, sir.

THE COURT: I don't want you to state anything. In view of the seriousness of this matter, I think you ought to state what you consider to be true.

THE DEFENDANT: It is so minimal that I feel like I'm an ass for even being here, sir.

THE COURT: I think you ought to say at least what it is.

THE DEFENDANT: I never knew the location. I never knew that bank existed. I don't live in that neighborhood. It speaks for itself, Your Honor.

THE COURT: Did you know you were involved in a plan to rob a bank?

THE DEFENDANT: When you say rob, I should say yes to that, Your Honor, I guess.

THE COURT: I don't mean that you were going to go into the bank but that one of your confederates was going to go in.

THE DEFENDANT: Yes, sir.

THE COURT: That Mr. Murphy was going to rob a bank.

THE DEFENDANT: Yes, I had knowledge of that, sir.

THE COURT: And did you have knowledge as to who Mr. Matlack was?

THE DEFENDANT: No, sir.

THE COURT: Did you know what connection, if any, he had with the bank?

THE DEFENDANT: No, I didn't.

THE COURT: Did you go to Mr. Matlack's home with Mr. Murphy? Did you come to the front door with Mr. Murphy as was testified to?

THE DEFENDANT: No, sir, I didn't go to the front door.

4. In *Paradiso v. United States,* 482 F.2d 409, 416 n. 5 (3d Cir. 1973), the Court called the practice of having the accused describe the conduct that gave rise to the charge "highly desirable," but noted that it was not "compulsory." The Third Circuit has also said:

In satisfying itself that there exists a factual basis for a plea, it is not necessary that the defendant personally be asked any questions. The court can satisfy itself as to the factual basis of the plea from any source. *Woodward v. United States,* 426 F.2d 959, 963 (3d Cir. 1970).

*Davis v. United States,* 470 F.2d 1128, 1229 n. 2 (3d Cir. 1972).

THE COURT: Were you in the house during that night, on the night of the 10th?

THE DEFENDANT: No, sir, I wasn't even in the house.

THE COURT: Mr. Holland, all I want to do is—

THE DEFENDANT: Why can't I just answer your question like I did before? Isn't that sufficient? I had knowledge.

THE COURT: Let's put it this way. Did you participate in a scheme which you knew would lead to the bank robbery?

THE DEFENDANT: Yes, I knew about it, Your Honor.

THE COURT: And did you know that there was going to be weapons used in connection with the bank robbery by somebody, by some confederate?

THE DEFENDANT: Yes, sir.

THE COURT: By either Mr. Murphy or Mr. Ford or by Mr. Ehly or somebody?

THE DEFENDANT: Yes.

THE COURT: And did you know Mr. Murphy?

THE DEFENDANT: I didn't know him by that name even, Your Honor.

. . .

(N.T. Change of Plea 22–24).

THE COURT: Did you receive a portion of the proceeds of this bank robbery?

THE DEFENDANT: I assume some of the money came from the bank robbery. I can't say no to that. I gave them some services rendered, Your Honor.

THE COURT: You rendered services to them in connection with this plan?

THE DEFENDANT: Other things than the plan, Your Honor.

(N.T. Change of Plea 25).

Thereupon, Mr. Paul, Holland's trial counsel, asked for a recess, after which he stated:

MR. PAUL: . . . I have consulted with Mr. Holland. Mr. Holland has indicated to me he wishes to continue. He has acknowledged to me that he was not present in the house and he acknowledges

to me that he knew where the people were going to be to split the money. And he did know that something was going on. He acknowledged to me that he went there to get money that he wanted from Mr. Ford to that location. And he knew it was the fruits of something illegal.

(N.T. Change of Plea 25–26). In addition, the record reflects that we gave Holland a virtual jury charge on the required elements of proof of the bank robbery counts, including the notion of aiding and abetting (N.T. Change of Plea 11–17) after which we posed this question:

Now the Government's charge against you, Mr. Holland, is that you were an aider and abettor of these crimes, which I defined to you at such length, entering the bank with intent to commit a felony, putting in jeopardy the lives of the employees by use of a handgun, taking the money of the bank, and so on. These various offenses. So that is Counts 1 through 4, and Count 6 is conspiracy, as I have defined it for you.

The question is whether you affirm to the Court against that background that you are guilty as charged in Counts 1 through 4 and Count 6. Are you guilty as charged in Counts 1 through 4 inclusive?

To this inquiry, Holland replied:

THE DEFENDANT: Yes, Your Honor.

THE COURT: And how about Count 6?

THE DEFENDANT: Yes, sir.

(N.T. Change of Plea 31).

It may be that standing alone Holland's admissions do not constitute sufficient factual basis because of the element of equivocation. But there is plainly much more in the record of the trial which was aborted by his plea. In addition (and we referred to these matters in accepting the plea at N.T. Change of Plea 28, 29): (1) Mr. Matlack identified Holland; (2) Mrs. Matlack also identified Holland as the so-called # 2

man,[5] though her testimony was not unqualified; (3) there was evidence of out-of-court identifications of Holland by Mr. Matlack and Mrs. Matlack; (4) there was evidence of telephone communication between Holland and Mr. Ehly who was identified as a co-conspirator and participant; (5) there was evidence of contact between Mr. Murphy and Holland which Holland acknowledged (Murphy had previously pleaded guilty); and (6) Holland was identified by co-defendant Ford (Ford had previously been found guilty); Ford testified that Murphy had introduced him to Holland and that Holland appeared shortly after the bank robbery at the vacant house where the robbery money was being split up (N.T. Feb. 5, 1974, at 17). The transcript of Holland's trial shows that the foregoing statements are well founded.[6] And, on their basis, we found "strong evidence, a strong factual basis on the record to support the plea." N.T. Change of Plea at 29, quoting *United States v. Jerry*, 487 F.2d 600, 610 (3d Cir. 1973).

In *Jerry*, the Third Circuit upheld a district judge's refusal to permit withdrawal of a guilty plea, although the defendant unequivocally protested his innocence at the time of the plea and thereafter. The Court found a sufficient factual basis in several statements of accomplices implicating Jerry and in Jerry's own prior confession, which he later sought unsuccessfully to repudiate. Judge Biggs, writing for the *Jerry* Court, relied on *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which the Supreme Court rejected an effort to attack a guilty plea in a case where the defendant faced the death penalty if he persisted unsuccessfully in his claim of innocence in the face of overwhelming evidence of guilt. Judge Biggs read *Alford* as establishing that "a defendant's protestations of innocence are not inconsistent with a voluntary, knowing, and understanding guilty plea, and the court may properly accept that plea where it is supported by a strong factual basis in the record." 487 F.2d at 610.

Upon reflection, it now appears to us that this case is not quite like *Alford* or *Jerry* because Holland never asserted his innocence. At most, he denied playing the # 2 man role (*see* note 5, *supra*) in the robbery kidnap plan which the prosecution ascribed to him.[7] Accordingly, we will view that case first in conventional terms and then, because it is helpful to our analysis, in *Jerry* terms.

We find that the evidence and admissions of guilt offered by Holland together with the other matters in the record to which we adverted establish a more than adequate factual basis for Holland's plea. Indeed, the Third Circuit has upheld a guilty plea under Rule 11 for which the only factual basis on the record was unequivocal entry of the plea itself, where the defendant had acknowledged, in connection with *another* plea entered at that same hearing, that he "understood that a guilty plea meant [he] admitted that [he] did the things charged in the indictment." *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973). The Court went on to suggest that in some circumstances, merely reading from the indictment would lay a sufficient factual basis for a valid plea under Rule 11. *Id.* at 415–16.[8] In this case, we pointed on the

---

5. During each of the trials, Mr. and Mrs. Matlack referred to the intruders by the style # 1 man, # 2 man, etc. Murphy was said to be # 1, Holland # 2 and Ehly # 3. Ford, who was not in the house but joined the group en route to the bank, was denominated the # 4 man. *See* 378 F.Supp. at 147.

6. We also relied upon a statement given by Mr. Murphy to the F.B.I. "in which he directly implicated Mr. Holland." N.T. Change of Plea at 29. The prosecutor, Mr. DeLuca, made this statement a part of the record. *Id.* at 33.

7. Holland's counsel promised that Holland would reveal his role at the time of sentencing, N.T. Change of Plea at 29, but the promise was not kept. N.T. Sentencing at 2–3 (June 26, 1974).

8. In *United States v. Maggio*, 514 F.2d 80, 87 (5th Cir. 1975), the Court upheld a plea where the district judge's satisfaction as to the factual basis derived solely from the presentence report and his having presided over a prior trial of the defendant which had been reversed on appeal. In *Maggio*, these facts apparently were not even placed on the record at the time

record to portions of the trial testimony from which the jury could properly have found Holland guilty beyond a reasonable doubt of aiding and abetting (and conspiring to commit) an armed bank robbery. (*See* text at notes 5–6 *supra.*) Surely, no more than that was necessary to support a guilty plea under Fed.R.Crim.P. 11.

Under the foregoing conventional standards, Holland's factual basis contention clearly lacks merit. . And while we have noted that, in retrospect, this does not appear to be a *Jerry*-type case, we believe that it is helpful also to view it in *Jerry* terms. While *Jerry* did not involve a plea bargain, it established what we view as a salutary rule, one most likely to be applied in plea-bargain situations, which have become more and more frequent in the wake of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and the amendments to Fed.R.Crim.P. 11. We see the *Jerry* rule as permitting a defendant who does not wish to admit his guilt but who nonetheless wishes to avoid the risks of trial and obtain a certain or at least more certain result, to enter a guilty plea (bargained for or otherwise) and have it accepted so long as: (1) the plea has been voluntarily, knowingly and understandingly entered with the effective assistance of counsel; and (2) there is a "strong factual basis" in the record.

The *Jerry* standard is met not only by what we find to be a "strong factual basis" in the record, but also by the cognitive features of Holland's guilty plea, which show that it was knowing and voluntary. Holland affirmed that he was motivated to plead in significant part by the plea bargain's removal of the jeopardy of the (e) count. (N.T. Change of Plea 32, 33). There was a thorough Rule 11 colloquy. Both before and during the colloquy he consulted with competent counsel. And, significantly, the record affirmatively shows that Holland had been employed for close to twenty-five years as a crier in the Philadelphia court system, rising just prior to the end of his career to the position of Assistant Chief Crier of the Court of Common Pleas. Nothing could more eloquently demonstrate that Holland's plea was the product of a knowing, understanding decision.

By entering the plea, Holland had a chance to avoid the imposition of a mandatory minimum term of ten years with a possible maximum of life imprisonment in the (apparently likely) event of conviction on the (e) count. Because there was no agreement as to sentence, he also reserved the opportunity to persuade the Court to sentence him to less than the twenty-five year maximum on the remaining five counts. (Actually, the maximum was thirty years, but we promised not to sentence consecutively for conspiracy.) Plainly, Holland had a choice to make—to plead or to proceed. In making it he was assisted by able and zealous counsel. As we view the record, when he made that choice and pleaded guilty, we committed no legal error, under either conventional or *Jerry* standards, in accepting the plea.[9]

of the plea. We need not express any opinion on the correctness of *Maggio* to note that the record here is far more complete.

**9.** Unlike the conventional situation, Holland's plea was entered in the midst of trial, indeed after the government had concluded its case and the defense had rested. The Matlacks, the victims of the crime, had now testified at three trials with Ehly's separate trial yet to come, and an improvident acceptance of Holland's plea would have lead to a fifth trial. However, the Matlacks' testimony would have been recorded yet another time, subject to those inevitable variations of expression to which all humans are subject when they recount the same events again and again. That is the stuff of which impeachment is made. Moreover, the Matlacks could be cross-examined at Holland's next trial as to the length of time they had been (again) in the same courtroom with Holland in an attempt to weaken their identification testimony by undermining its basis. While it is not a ground of our decision, we note that a strong argument can be made that, because of the prejudice which the government would suffer under these unique circumstances from an improvident acceptance of Holland's guilty plea, the burden Holland must meet to set aside his plea is even higher than it would otherwise be, or that it must be balanced against the prejudice. We were, of course, aware of the consequences of an improvidently accepted plea, hence we were extra careful to satisfy ourselves that the plea was properly entered.

### B. *Consequences of the Plea.*

█ Under Fed.R.Crim.P. 11 as it stood prior to the 1975 amendments, a district judge was forbidden to accept a plea of guilty "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." [10] Failure to comply with the rule results in "automatic prejudice" permitting withdrawal of the plea. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Berry v. United States*, 412 F.2d 189, 190 (3d Cir. 1969). Holland claims that the United States Parole Commission, when it examines his case upon his achieving parole eligibility in July, 1978, will, because of its policy in such matters, treat him no differently than if he had been convicted of kidnapping (that is, a violation of 18 U.S.C. § 2113(e)). This treatment, his petition argues, will nullify the presumed benefit of the plea bargain he struck with the government. All this, he concludes, shows he did not understand "the consequences of the plea."

█ Holland's argument is based on a misconstruction of what are the "consequences" of a guilty plea under Rule 11. In *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973), the Court found "an adequate inquiry into the defendants' understanding of the consequences of the pleas" where the judge ascertained no more than that the defendants knew the maximum penalties to which they were exposed on each count. The Court rejected claims that the defendants should have been advised expressly of the possibility of their sentences' being imposed consecutively or informed of "the actual sentence" that would be imposed. *Id.* Perhaps the only "consequence" other than the maximum penalty which the Third Circuit ever agreed a defendant had to understand was the parole ineligibility provision of former 26 U.S.C. § 7237, which applied to certain narcotics offenders. [11] *Berry, supra.*

█ Holland does not and could not claim that the Parole Commission has somehow rendered him "ineligible" for parole, or in any other way added to the period of confinement he could reasonably have expected in entering his plea. [12] The government in

---

**10.** As amended effective December 1, 1975, Rule 11 no longer contains the "consequences" language. Instead, the judge "must address the defendant personally in open court and inform him of, and determine that he understands . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . ." Fed.R.Crim.P. 11(c)(1). Under the present rule, then, a controversy such as this one would not arise. The effect of the new version of the rule is to shift the focus more to the competency of counsel in advising and explaining the plea. *Cf. Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Michel v. United States*, 507 F.2d 461, 466 (2d Cir. 1974).

**11.** We include within the notion of "maximum penalty" the requirement that a drug defendant be warned of the possibility of an unlimited consecutive "special parole term" under 21 U.S.C. § 841(c). *United States v. Crusco (Cimmino)*, 536 F.2d 21 (3d Cir. 1976); *Roberts v. United States*, 491 F.2d 1236 (3d Cir. 1974). *See also Kelsey v. United States*, 484 F.2d 1198 (3d Cir. 1973); *United States v. Jasper*, 481 F.2d 976 (3d Cir. 1973) (erroneous advice as to maximum). *Cf. United States v. Hawthorne*, 532 F.2d 318, 321 (3d Cir. 1975) (no need to advise as to penalty on count that is to be

dismissed); *United States v. Cariola*, 323 F.2d 180 (3d Cir. 1963) (no need to advise about possible loss of right to vote).

**12.** One leading commentary on the interrelationship between parole and federal sentencing suggests that under the pre-1975 version of Rule 11 a parole guideline rating (*see* 28 C.F.R. § 2.20) equal to the maximum sentence imposed is so similar to parole ineligibility that it should be disclosed by the court as a consequence of the plea. Project, *Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 880–81 (1975). However, Parole Commission guidelines and statistics with respect to long sentences for bank robbery show that 25 of the 26 prisoners serving 15-year sentences who were released during 1974 were released on parole. A third of them (8) were released upon first achieving eligibility; another third (9) had served no more than half the term imposed; none had served more than nine years of his 15-year term. *United States v. Jenkins*, 403 F.Supp. 407, 409 (D.Conn.1975) (Newman, J.). Even the Yale Project suggestion is inapplicable in this case because there is no parole guideline which is equal to or even approaches the 15-year sentence imposed, and because, as the statistics developed at Judge

its brief does not concede Holland's claim that he will be viewed by the parole examiners as though he had been convicted of the (e) count. The government suggests that Holland could not prove his claim that there is a regular scheme to do so and properly points out that in no event can he predict what the Commission will do in the future. However, even assuming that it is true that the nature of Holland's offense will be viewed by parole examiners at some time in the future no differently than if he had been convicted on the (e) count, that fact was not a "consequence" of the plea. Accordingly, we committed no violation of Rule 11 in failing to reveal that prospect to him.

### C. The Intention of the Sentencing Judge.

Holland's third contention relates not to his plea but to the sentence of 15 years we imposed upon him, with parole eligibility to arise after service of one-third of the term. He contends that his anticipated treatment by the Parole Commission, *i. e.*, its putative consideration of the dismissed (e) count, will be inconsistent with our sentencing intent, that his sentence was thus imposed under a mistake of fact or law, and that it is subject to collateral attack under 28 U.S.C. § 2255. He relies on *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975); *United States v. Lewis*, 392 F.2d 440 (4th Cir. 1968). *Cf. Sobell v. Attorney General*, 400 F.2d 986, 988 (3d Cir.), *cert. denied*, 393 U.S. 940, 89 S.Ct. 302, 21 L.Ed.2d 277 (1968) (sentencing judge under § 2255 could "correct" a sentence to reflect intended commencement date).

In *United States v. Salerno (Silverman)*, 538 F.2d 1005, *opinion on denial of rehearing*, 542 F.2d 628 (3d Cir. 1976), decided after the argument of this petition, the Third Circuit held that a district court had jurisdiction and power under § 2255 to vacate a sentence the "import" of which " 'has in fact been changed by guidelines adopted by the Parole Board [contemporaneous with or] subsequent to the imposition of that sentence.' *United States v. White*, 540 F.2d 409, at 411 (8th Cir., 1976)." 542 F.2d at 629. In *Silverman*, the sentencing judge imposed a three-year term pursuant to former 18 U.S.C. § 4208(a)(2) (now § 4205(b)(2)) on a man whose parole guidelines ran at least 45 months. At his initial hearing, he was "set off" for a file review at the completion of a third of his sentence; at the file review, the Board continued his case to expiration, that is, denied parole entirely. Only then did he file for vacation of his sentence, which was granted partially on the basis of remarks by the sentencing judge showing that he clearly intended that Silverman be given individual consideration for parole.

The sentence imposed on Holland does not afford him parole eligibility until July 1978, a result we fully understood and intended. Thus unlike the claim in *Silverman*, Holland's contention is not ripe for consideration at this time. The Parole Commission has not yet acted at all on his case, and thus has clearly not acted in any way so as to undo our intent or demonstrate some legal or factual error in our sentencing decision.

However, even if the claim were ripe, and even assuming his complaint of inconsistency between Parole Commission treatment of his offense severity and our sentencing intent stated a claim for § 2255 relief, we would deny it on the merits.[13] Our intention in imposing the 15-year Regular Adult sentence was that Holland serve at least five years in prison, but no more

Newman's request disclose, the actual guideline experience is closer to Holland's initial parole *eligibility* date than to the maximum sentence imposed.

**13.** It is not entirely clear, particularly in the wake of the opinion on denial of rehearing, 542 F.2d 628 (3d Cir. 1976), how far *Silverman* extends. We reach the merits, assuming that its rationale extends beyond the immediate (4208(a)(2)) parole eligibility sentence situation and beyond the temporal framework of sentences imposed before the existence and application of the guidelines became generally known, but without deciding those questions. It is sufficient for our purposes to show that the *Silverman* holding is inapplicable here.

than 15, with the timing of parole otherwise left to the Board (now the Commission) under whatever lawful standards they might apply to such cases.[14] The crime of holding a terror-stricken family hostage overnight and kidnapping the husband and father in aid of a bank robbery is a heinous one. In view of that fact and Holland's bad past record despite his excellent opportunities in life,[15] the sentence was appropriate and fair, not overly harsh. Moreover, on the record at the time of sentencing we made clear our awareness of the Parole Guidelines (N.T.Sent. 8). We did note that the defendant was 53 years old at the time of sentencing and our belief that he would be paroled "well before" the expiration of his sentence. *Id.* at 10. And we iterated several times that the (e) count was not before us. However, we did not deny that the whole case had "overtones of the (e) count." *Id.* Indeed, we declared:

> There are few crimes more awful than this crime in terms of the terror that it strikes into people. It is not instant terror of the moment as in the ordinary bank robbery, which is fleeting, but sustained and measured. It is one of the very most serious crimes.

*Id.* at 5. If the parole policy complained of exists at the time that Mr. Holland's parole eligibility arises, it will not be inconsistent with the sentence imposed on him. The sentence, while substantial, was lawful.

An order denying the petition follows.

---

**14.** We have no hesitancy about stating our intention. The *Silverman* court stated:

> We do not believe that our holding will seriously burden either the district courts or this court. Where the motion to vacate sentence can be directed to the sentencing judge, the question whether his sentencing expectations have been frustrated is easily resolved and there should be no need for review of that decision in the Court of Appeals. . .

538 F.2d at 1009.

**15.** As we have noted above, Holland worked for 24 years as an officer of the Philadelphia courts, rising to the position of Assistant Chief Crier of the Court of Common Pleas. Holland was previously convicted of malfeasance in office and blackmail (the result of his court officer activities) and sentenced to a term of 2–10 years. Moreover, he told the United States probation officer who prepared the presentence report that over a period of years he was guilty of "fixing many cases."