**UNITED STATES of America, Appellee,**

v.

**Amos DRESSER, a/k/a Bud Dresser, Appellant.**

No. 76–1321.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Oct. 8, 1976.

Raymond C. Conrad, Jr., Asst. Fed. Public Defender, Springfield, Mo., for appellant; David R. Freeman, Springfield, Mo., on the brief.

James C. England, Asst. U.S. Atty., Springfield, Mo., for appellee; Bert C. Hurn, U.S. Atty., Springfield, Mo., on the brief.

Before GIBSON, Chief Judge, MARKEY, Judge,* and STEPHENSON, Circuit Judge.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

STEPHENSON, Circuit Judge.

This appeal requires review of appellant's conviction pursuant to 26 U.S.C. §§ 5861(d) and 5861(f) for making and possessing firearms which had not been registered. Following a jury trial resulting in a finding of guilt, the district court[1] imposed a seven-year sentence of imprisonment. The principal issues arising in this appeal relate to the sufficiency of a search warrant's supporting affidavit and the extent of appellant's mental competency at the time of the offense. For the reasons stated below, we affirm.

### I.

The initial issue raised in this appeal is whether a search warrant and its supporting affidavit were based on a demonstration of probable cause. The application for the search warrant was founded on Deputy Sheriff Donald Swan's affidavit which states as follows:

On Aug. 2, 1975 an armed robbery and attempted murder occurred at the "Hi-Ho" Motel in Branson, Missouri. The Victim of that attempt has positively identified Amos "Bud" Dresser as her assailant. .22 calibre bullets have been removed from the victim's body. I went to Bud Dresser's house at his request and prior to arresting him for this offense he invited myself and Deputy Van Michel into his home for the purpose of viewing a .410 shotgun which he stated would explain any gun powder residue on his hands. While we were in the house we observed in plain view .22 calibre ammunition on the dresser in the living room. Dresser has told conflicting stories about owning any .22 calibre weapon.

The victim also states that Dresser was wearing a different shirt when he robbed her than he had on when she identified him in a line up a few hours later. We know that Dresser went inside his house after the time of the robbery and before we arrived at his house.

We have not been able to locate any of the money taken in the robbery or the weapon used. I have good reason to believe that Dresser owns a .22 calibre weapon by virtue of his conflicting stories and by the fact that he had a paper in his wallet with identifying information regarding a .22 Cal; weapon on it.

Based on these facts and observations I have strong reason to believe that these items of stolen property and evidence of this crime are located in Dresser's house.

Based upon this affidavit the magistrate of Taney County, Missouri, issued a search warrant on August 3, 1975, authorizing inspection of the residence and "out-buildings" of appellant Amos Dresser for a .410 gauge shotgun, approximately $80 in coin and currency, one light blue shirt, a .22 calibre pistol and .22 calibre ammunition. As a result of the execution of the search warrant, police officers seized two home-made pipe bombs and other items that can be utilized to make pipe bombs. At trial these items were identified by Deputy Sheriff Swan and were described by Don Smith, a chemist with the Missouri Crime Lab, as objects which could be used in the construction of pipe bombs.

Appellant contends that the district court erred when it denied his motion to suppress the admission of the pipe bombs and related objects into evidence. Specifically, appellant asserts that the affidavit submitted by the police failed to demonstrate probable cause for the issuance of the warrant.[2] For example, in appellant's view, the affidavit's reference to "conflicting stories" told by Dresser with reference to a .22 calibre weapon is an unsupported conclusion without recitation of further facts.

■ The Fourth Amendment, of course, provides that a search warrant may issue

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. Although appellant in his motion to suppress objected to admission of items seized which were not described in the warrant (pipe bombs,

etc.), in this appeal he confines his attack to the factual insufficiency of the affidavit accompanying the application for the search warrant. It appears that the trial court's ruling that items seized were contraband is supported by the record.

only upon a showing that there is probable cause to believe items sought are located on the premises for which the warrant is requested. *Aguilar v. Texas,* 378 U.S. 108, 112, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ The supportive affidavit submitted in the instant case provided the magistrate with sufficiently definite information to justify a finding of probable cause. In substance, Deputy Sheriff Swan's affidavit stated that an armed robbery and attempted murder had occurred at the Hi-Ho Motel in Branson, Missouri; the victim of the robbery and murder attempt had positively identified Amos Dresser as the assailant; .22 calibre bullets had been removed from the victim's body; and that .22 calibre ammunition had been observed in plain view by police officers in Dresser's residence.[3]

■ In evaluating the showing of probable cause necessary to support the issuance of a search warrant, a reviewing court should be cognizant of the Supreme Court's admonition in *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

> If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

The affidavit submitted by Deputy Sheriff Swan, although not a model of clarity and detailed specificity, nevertheless demonstrated sufficient compliance with the requirements of the Fourth Amendment.[4]

## II.

The remaining issue in this appeal is whether there is adequate evidence in the record to justify submission of the question of appellant's sanity to the jury.[5] In an attempt to establish lack of criminal responsibility at the time of the commission of the offense on August 3, 1975, the defense called three witnesses: the defendant Dresser; Dr. Richard Webb of the Medical Center for Federal Prisoners at Springfield, Missouri; and William F. Clary, a psychiatrist in private practice.

Dresser testified that prior to August 3, 1975, he had experienced severe attacks of bronchial asthma and emphysema and that as a result he had been given various forms of medication, including a drug called Pred-

---

3. Parenthetically, it should be noted that the affidavit is based partially on hearsay information to the extent that Deputy Sheriff Swan alluded to information supplied by the victim of the armed robbery. The reliability of such hearsay information must be tested under the standards set forth in *Aguilar v. Texas, supra,* 378 U.S. at 110–15, 84 S.Ct. 1509, and its progeny. In any event, the personal and recent knowledge of an unidentified informant, in this case the victim of a crime, may establish sufficient probable cause to support the issuance of a search warrant. *See United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Cundiff v. United States,* 501 F.2d 188, 190 (8th Cir. 1974); *McCreary v. Sigler,* 406 F.2d 1264, 1268–69 (8th Cir.), *cert. denied,* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969).

4. We also reject appellant's contention that the affidavit is deficient because it failed to describe with more detail some of the items to be seized (specifically the shirt, shotgun and pistol). The crucial inquiry in this regard concerns the extent of specificity contained within the search warrant. In assessing the constitutional standard for particularity of description, there is a practical margin of flexibility and the warrant need only be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized. *See United States v. Johnson,* 541 F.2d 1311, at 1313–1315 (8th Cir. 1976). The search warrant in the instant case, by identifying the items as one light blue shirt, a .410 gauge shotgun and a .22 calibre pistol, complies with this standard of exactness.

5. Dresser does not contend that he was mentally incompetent to stand trial.

nisone. Dresser also expressed that he had experienced confusion, extreme elation and depression at different times. Dresser admitted that he had personally constructed the pipe bombs and that he had realized the explosives could be extremely dangerous under certain conditions. Although Dresser gave various potential reasons for the construction of the explosives, his basic motivation was experimentation. On cross-examination Dresser conceded that he was fully aware of his actions when he constructed the pipe bombs; that he knew how the bombs worked; and reiterated that the construction of such explosives had been his hobby for years.

Dr. Webb testified that he had examined Dresser on January 26, 1976, at the Medical Center for Federal Prisoners and had prescribed Prednisone for Dresser's physical problems. Dr. Webb stated that Prednisone could cause mental disturbances such as euphoria, depression and psychotic effects. Dr. Webb admitted, however, that Dresser had not suffered from severe depression bordering on psychosis and that Dresser had been able to appreciate the consequences of this conduct while under the effects of Prednisone.

Dr. Clary testified that in his opinion, Dresser, as a result of mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law on August 3, 1975, the date of the offense. *See United States v. Frazier,* 458 F.2d 911, 918 (8th Cir. 1972). Dr. Clary concluded that Dresser's lack of mental responsibility at the time of the commission of the offense related to the use of the drug Prednisone. Dr. Clary indicated that his opinion was based both on an examination of Dresser on December 10, 1975, four months after the offense, and a social history as reiterated by the defendant and his wife.

The government introduced the testimony of Charles D. Ottensmeyer, a psychiatrist at the Medical Center for Federal Prisoners and three lay witnesses in order to show that Dresser was sane at the time of the commission of the offense. The lay witnesses had the opportunity to observe the defendant's conduct at approximately the time of the offense.

Dr. Ottensmeyer essentially testified concerning the factors used to evaluate a person's sanity, such as memory, background, and ability to respond to questions. Based on his examination of Dresser on October 8, 1975, Dr. Ottensmeyer expressed the opinion that the defendant was then competent to stand trial. However, Dr. Ottensmeyer could not give an opinion as to Dresser's responsibility at the time of the offense because he did not have the necessary information before him with respect to Dresser's condition on August 3, 1975.

James Copeland, an agent with the Bureau of Alcohol, Tobacco and Firearms, testified that he had advised Dresser of his constitutional rights on August 3, 1975, and that Dresser had asserted those rights.[6] Agent Copeland stated that information supplied by Dresser had proven correct and that Dresser had not appeared confused. Agent Copeland also related that the defendant had indulged in a knowledgeable discussion concerning the subject of pyrotechnics.

The government offered the testimony of two additional law witnesses. Ms. Peggy Silar, a licensed firearms dealer, stated that Dresser had purchased a gun at her store on July 26, 1975, and that Dresser's behavior during this transaction did not appear unusual. Dresser filled out the prescribed form and answered questions asked of him. Mr. Lowell Sauter, an employee of a licensed firearms dealer, also testified that he had observed nothing unusual about Dresser's conduct during conversations with the defendant. Mr. Sauter was not able to specify the exact dates of these conversations but expressed the opinion that they occurred around the time of Dresser's purchase of a firearm on July 30, 1975.

---

**6.** Appellant's ability to assert his constitutional rights necessarily should be viewed in light of his experience as an officer with various police departments.

Appellant contends that the district court erred in refusing to enter a judgment of acquittal and asserts that the evidence of his sanity is insufficient. *Cf. Isaac v. United States,* 109 U.S.App.D.C. 34, 284 F.2d 168, 169–72 (1960).

■ A criminal defendant is presumed sane, but the introduction of evidence of insanity dispels the presumption and subjects the prosecution to the burden of proving sanity beyond a reasonable doubt. *Davis v. United States,* 160 U.S. 469, 486–88, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *Dusky v. United States,* 295 F.2d 743, 754 (8th Cir. 1961), *cert. denied,* 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962). *See also Tarvestad v. United States,* 418 F.2d 1043, 1050 (8th Cir. 1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970).

■■ Assuming the evidence of insanity offered by the defense was sufficient to shift the burden of proving Dresser's sanity to the prosecution,[7] we conclude that the evidence, viewed as a whole, afforded the jury the choice of finding the defendant to be sane beyond a reasonable doubt and that, therefore, the submission of the insanity issue to the jury was proper.[8]

■ The nature and quantum of evidence which the government must produce to meet the burden of proving sanity varies with the nature and quantum of evidence indicating mental illness. *Dusky v. United States, supra,* 295 F.2d at 754. The evidence of insanity offered by the defense in the instant case was by no means "overwhelming." *See United States v. Stewart,* 443 F.2d 1129, 1133–35 (10th Cir. 1971). The critical testimony in this regard was that of Dr. Clary, who expressed the opinion that Dresser was insane at the time of the commission of the offense. Dr. Clary's opinion was predicated to a great extent upon subjective symptoms and narrative statements offered by the defendant and his wife. In cases involving opinions of medical experts, the probative value of expert testimony is lessened when it is based on subjective symptoms and narrative statements. *See Mason v. United States,* 402 F.2d 732, 737–38 (8th Cir. 1968), *cert. denied,* 394 U.S. 950, 89 S.Ct. 1288, 22 L.Ed.2d 484 (1969); *Mims v. United States,* 375 F.2d 135, 143–44 (5th Cir. 1967). Furthermore, the value of Dr. Clary's testimony, reflecting that the drug Prednisone was the major cause of Dresser's alleged mental problems, was diminished by Dr. Webb's statement that Dresser did not behave in a psychotic manner under the effects of the drug. Moreover, Dresser's own testimony indicates that he understood the nature and consequences of his actions when he constructed the pipe bombs.

■ The government's evidence of defendant's sanity consisted essentially of lay testimony.[9] Nevertheless, lay testimony can be sufficient to satisfy the prosecution's burden of proving a defendant's sanity, even though there is expert testimony to the contrary. *Dusky v. United States, supra,* 295 F.2d at 754. *See also Mims v. United States, supra,* 375 F.2d at 140–41. The lay testimony offered in the instant case reflects that Dresser appreciated and understood the consequences of his actions at approximately the time of the commission of the offense. Although the opportunity of the lay witnesses to observe the defendant was relatively brief, this fact reflects on the weight of the evidence rather than its admissibility. *See Mason v. United States, supra,* 402 F.2d at 738; *Kaufman v. United States,* 350 F.2d 408, 413–14 (8th

---

7. In view of our disposition of this issue, it is unnecessary to decide whether the defense established a prima facie case of insanity.

8. Insanity is a jury question unless a reasonable man viewing the facts in the light most favorable to the government must necessarily possess a reasonable doubt as to the defendant's sanity. *Dusky v. United States, supra,* 295 F.2d at 755.

9. The value of Dr. Ottensmeyer's testimony is obviously limited because he could only express an opinion with respect to Dresser's sanity at the time of trial and could not evaluate the defendant's mental state at the time of the offense.

Cir. 1965), *cert. denied,* 383 U.S. 951, 86 S.Ct. 1211, 16 L.Ed.2d 212 (1966).  We are satisfied that the trial court's submission of the issue of Dresser's sanity to the jury was proper.

Affirmed.