UNITED STATES of America, Appellee,

v.

Louis GILLISS, Appellant.

No. 80–1329.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 8, 1980.

Decided Feb. 9, 1981.

C. John Pleban, St. Louis, Mo., for appellee.

Evelyn M. Baker, Asst. U. S. Atty., St. Louis, Mo., for appellant.

Before HENLEY and McMILLIAN, Circuit Judges, and VAN PELT,* Senior District Judge.

McMILLIAN, Circuit Judge.

Louis Gilliss appeals from a judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of kidnapping (count I) (18 U.S.C. § 1201(a)) and interstate transportation of a stolen motor vehicle (count II) (18 U.S.C. § 2312). The district court sentenced appellant to twenty years imprisonment on count I and three years on count II, to be served consecutively.

For reversal appellant argues that the district court erred in (1) failing to dismiss the indictment for violation of the Speedy Trial Act and local speedy trial plan, (2) refusing to grant appellant's motion for judgment of acquittal, (3) refusing to subpoena appellant's former wife as a defense witness, (4) giving certain instructions to the jury, and (5) sentencing appellant to a term of imprisonment in excess of twenty years and without specifying that he would be eligible for parole consideration after three years. For the reasons discussed below, we affirm the convictions, vacate the sentence imposed on court I, and remanded to the district court for resentencing consistent with this opinion.

Appellant does not challenge the sufficiency of the evidence.[2] Because of a gambling problem, appellant faced a financial crisis in early 1978. The police wanted him on a variety of outstanding warrants in several states for writing bad checks, larceny and embezzlement. In April, 1978, he was in Louisville, Kentucky, looking for a car. On April 8, 1978, at about 3 p. m., appellant approached George Hunter, Jr., as Hunter was getting into his car. Appellant told Hunter that he had a gun, displayed the handle of the gun, and directed appellant to move over to the passenger seat. Hunter testified that he asked appellant if he could leave the car and that appellant refused to let him go. Appellant placed the gun in his lap and told Hunter to give him directions to Nashville, Tennessee. For the next fifteen hours, appellant drove from Kentucky to Tennessee, back to Kentucky, through Illinois, and then to Missouri.

At about 6 a. m. on April 9, 1978, a St. Louis County police officer stopped the car because of appellant's erratic driving. While appellant showed identification to the police officer, Hunter waved his hands in a suspicious manner. The officer radioed for assistance. When the officer asked appellant if anything was wrong with his passenger, appellant jumped in the car and drove off. Hunter in some way managed to roll out of the passenger side. Hunter explained the situation to the police. Another police car chased appellant and forced him

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. Appellant's theory of defense was insanity. Appellant admitted that he kidnapped Hunter. Brief of Appellant at 29.

off the highway. The police arrested appellant and found the gun about ten feet from the car. The gun was loaded but the cylinder next to the hammer was empty. The police found one round of ammunition in appellant's pocket.[3]

Appellant was originally charged on May 11, 1978, in a two-count indictment with kidnapping and interstate transportation of a stolen motor vehicle. Appellant entered a plea of not guilty on June 2, 1978. On the first day of trial, June 17, appellant withdrew his plea of not guilty and pleaded guilty to kidnapping.[4] Count II was dismissed. Appellant was originally sentenced to life imprisonment pending a psychiatric evaluation pursuant to 18 U.S.C. § 4205(c). The district court thereafter reduced the sentence to twenty years imprisonment. The district court subsequently amended the sentence to provide for parole consideration after three years pursuant to 18 U.S.C. § 4205(b)(1).

 In April, 1979, appellant filed a § 2255 motion.[5] The district court (Judge Filippine) granted this motion, finding that the record of the guilty plea proceedings failed to disclose a factual basis for the guilty plea as required by Fed.R.Crim.P. 11(f). *Gilliss v. United States*, No. 79–494–C–(3) (E.D.Mo. Sept. 27, 1979) (order vacating judgment). The government reindicted appellant on the original two counts. Appellant pleaded not guilty by reason of insanity. The second trial[6] began April 7, 1980. Appellant was found guilty on both counts and sentenced to twenty years imprisonment on count I and three years on count II, to be served consecutively.

## I. *Speedy Trial Act*[7]

Appellant filed several pretrial motions to dismiss the indictment for failure to com-

---

3. Appellant had explained to the police officers that he had removed the round from the gun because he did not want to accidentally shoot anyone.

4. Appellant's first trial was before the Honorable Edward L. Filippine. Appellant's second trial was before Judge Hungate.

5. In his § 2255 motion appellant argued that he believed he was pleading guilty to abduction (of the car ostensibly) only, that kidnapping for ransom was denied throughout the criminal proceedings, and that he had not transported Hunter against his will. Appellant contended that he "commandeered" the car as a means of transportation to escape the police and that he offered to let Hunter go but Hunter wanted to stay with the car. We note that the offense of kidnapping does not require any evidence of pecuniary motive. *E. g., United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977), *citing United States v. Healy*, 376 U.S. 75, 81–82, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964).

6. Appellant's 1980 trial will be referred to as his *second* trial for purposes of clarity. Appellant pleaded guilty on the first day of his 1978 trial (*see* note 4 *supra*).

7. We also find no violation of appellant's sixth amendment right to a speedy trial. Under the *ad hoc* balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), we must consider at least the following four factors: length of delay, the reason for the delay, the promptness of the defendant's assertion of the right to

a speedy trial, and the prejudice to the defendant from such delay. The two-year delay from arrest to trial in the present case was substantial and thus a sufficient "triggering mechanism" to require further inquiry, *id.* at 530, 92 S.Ct. at 2191. However, the reasons for the delay weigh strongly in favor of the government. Approximately 15½ months delay is attributable to the time between appellant's guilty plea and the successful collateral attack and thus not chargeable to the government. *See United States v. Mills*, 434 F.2d 266, 270 (8th Cir. 1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 908, 27 L.Ed.2d 828 (1971), *citing United States v. Ewell*, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966); *cf. United States v. Herman*, 576 F.2d 1139, 1145 & n.5 (5th Cir. 1978) (withdrawal of guilty plea). As discussed in the text, most of the six months between the time the first conviction was vacated and trial was consumed by various defense motions and psychiatric examinations. *See Hodgdon v. United States*, 365 F.2d 679, 686 (8th Cir. 1966), *cert. denied*, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967). Appellant promptly and vigorously asserted his right to a speedy trial, but the prejudice claimed by appellant is based upon the increased difficulty of accurate psychiatric evaluation of his mental state due to the lapse of time between the incident and the examinations. Such an allegation of prejudice is highly speculative. *Cf. United States v. Manetta*, 551 F.2d 1352, 1354 (5th Cir. 1977) (using test in *Marion* [*U. S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468]). Having balanced the relevant factors,

ply with the provisions of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976 & Supp. III 1979), as implemented by the Eastern Missouri District Court Rules app. (Speedy Trial Plan) (approved by the Eighth Circuit Judicial Council on June 13, 1978). The district court found that the government had complied with the provisions of the Speedy Trial Act because the 60-day time limit from arraignment to trial began to run with the filing of the superseding indictment in October 1979 and because twenty-seven days counted as excludable delay for psychiatric examinations. *United States v. Gilliss*, No. 78–101–CR–(4) (E.D.Mo. Nov. 19, 1979) (Hungate, J.) (order denying pretrial motions).

Appellant argues that the time limit for commencement of trial with respect to count II (interstate transportation of a stolen motor vehicle) should be calculated under § 5(d)(3) of the 1978 local speedy trial plan which refers to superseding charges.[8] Appellant contends that the time limit began to run on June 2, 1978 (first arraignment), was tolled by the holding in abeyance and dismissal of count II on the motion of the United States Attorney on June 17, 1978, and began to run again on October 19, 1979 (second arraignment upon superseding indictment filed October 18, 1979). Excluding time chargeable to pre-

trial defense motions and psychiatric examinations, appellant argues that trial should have begun on January 28, 1980, under the 1978 local speedy trial plan's 60-day limit.[9] Appellant also applies this timetable to count I, arguing that, because the district court erred in accepting appellant's guilty plea, any delay attributable to the guilty plea should be "constructively chargeable to the government," citing *United States v. Carini*, 562 F.2d 144, 152 (2d Cir. 1977). Because the second trial did not begin until April 7, 1980, appellant argues that his statutory right to a speedy trial was clearly violated and the district court erred in failing to dismiss the indictment.

 We note preliminarily that, assuming the Speedy Trial Act, as implemented by the local speedy trial plan, had been violated, appellant was not necessarily entitled to dismissal of the indictment in the present case. Section 10(b) of the 1978 local speedy trial plan provides only:

> Failure to comply with the requirements of Title I of the Speedy Trial Act *may* entitle the defendant to dismissal of the charges against him. Nothing in this plan shall be construed to require that a case be dismissed in circumstances in which dismissal would not be required by 18 U.S.C. § 3162.

---

we find no violation of appellant's constitutional right to a speedy trial.

**8.** § 5(d)(3) of the 1978 local speedy trial plan provides:

(d) *Superseding Charges.* If, after an indictment or information has been filed, a complaint, indictment, or information is filed which charges the defendant with the same offense or with an offense required to be joined with that offense, the time limit applicable to the subsequent charge will be determined as follows:

(3) If the original indictment or information was dismissed on motion of the United States Attorney before the filing of the subsequent charge, the trial shall commence within the time limit for commencement of trial on the original indictment or information, but the period during which the defendant was not under charges shall be excluded from the computations. Such period is the period be-

tween the dismissal of the original indictment or information and the date the time would have commenced to run on the subsequent charge had there been no previous charge.

**9.** *Id.* § 5(a) provides:

(a) *Time Limits.* Where a plea of not guilty is entered, the trial of the defendant shall commence within 60 days from arraignment on the indictment or information at such place, within this district, as fixed by the appropriate judicial officer.

The district courts were free during the transitional period to set more stringent time limits than those provided in the Speedy Trial Act. *See, e. g., United States v. Peters*, 190 U.S.App. D.C. 370, 587 F.2d 1267, 1271 n.9 (1978) (time limit from arrest to indictment). The Speedy Trial Act and the 1980 local speedy trial plan specify a 70-day limit from arraignment to trial. 18 U.S.C. § 3161(c)(1) (Supp. III 1979); E.D. Mo.R. app. § 4(a) (1980).

(Emphasis added.) Mandatory dismissal [10] of an indictment as a sanction for noncompliance with the Speedy Trial Act was not available until July 1, 1980. *See* 18 U.S.C. §§ 3162, 3163(c) (1976 & Supp. III 1979); *e. g., United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 376–77 (2d Cir. 1979). During the transition period from January 3, 1975 (the date the Speedy Trial Act became effective, Speedy Trial Act of 1974, Pub.L.No.93–619, 88 Stat. 2076) until July 1, 1980 (the date the sanctions in 18 U.S.C. § 3162 became effective, 18 U.S.C. § 3163(c) (Supp. III 1979), *as amended by* Speedy Trial Act Amendments Act of 1979, Pub.L.No.96–43, § 6, 93 Stat. 328), violation of the Speedy Trial Act was not *per se* grounds for dismissal of an indictment.[11] *E. g., United States v. Peters*, 190 U.S.App.

D.C. 370, 587 F.2d 1267, 1270 n.6 (1978); *United States v. Carini, supra*, 562 F.2d at 148.

Like the district court, we find no violation of the Speedy Trial Act or the 1978 local speedy trial plan. While there may be presented a question whether the applicable section of the Speedy Trial Act is § 3161(e) [12] (trial following appeal or collateral attack) or § 3161(i) [13] (trial following withdrawal of a guilty plea), the day the time limit begins to run is the same under either section, that is, the day the order occasioning the retrial or trial becomes final.[14] Similarly, under the 1978 local speedy trial plan whether the present case falls under § 5(b) (retrial following appeal or collateral attack) [15] or § 5(c) (withdrawal of guilty plea),[16] the operative date remains

**10.** After July 1, 1980, the district court must dismiss the indictment. The district court can, however, dismiss the indictment with or without prejudice. *See* 18 U.S.C. § 3162(a)(2) (1976).

**11.** However, violation of the Speedy Trial Act is a factor the district court could consider in deciding whether to dismiss an indictment for unnecessary delay under Fed.R.Crim.P. 48(b).

**12.** 18 U.S.C. § 3161(e) (Supp. III 1979) provides:

(e) If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

**13.** *Id.* § 3161(i) (1976) provides:

(i) If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently with-

drawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

**14.** The court believes that § 3161(e) is the controlling section; appellant's retrial was occasioned by the granting of his motion to vacate sentence pursuant to 28 U.S.C. § 2255. In our opinion, § 3161(i) applies to the granting of motions to withdraw guilty pleas pursuant to Fed.R.Crim.P. 32(d). As noted in the text, the operative date is the same under both sections. *Compare* 18 U.S.C. § 3161(e) (Supp. III 1979) ("the date the action occasioning the retrial becomes final"), *with id.* § 3161(i) (1976) ("the day the order permitting withdrawal of the plea becomes final").

**15.** E.D.Mo.R. app. § 5(b) (1978) provides:

(b) *Retrial.* The retrial of a defendant shall commence within 60 days from the date the order occasioning the retrial becomes final. If the retrial follows an appeal or collateral attack, the court may extend the period if unavailability of witnesses or other factors resulting from passage of time make trial within 60 days impractical. The extended period shall not exceed 180 days.

**16.** *Id.* § 5(c) provides:

(c) *Withdrawal of Plea.* If a defendant enters a plea of guilty or nolo contendere to any or all charges in an indictment or information and is subsequently permitted to withdraw it, the arraignment with respect to the entire indictment or information shall be deemed to have been held on the day the order permitting withdrawal of the plea becomes final.

the same as under the Speedy Trial Act, that is, the day the order occasioning the retrial or trial becomes final.[17]

The meaning of the phrase "the date the action occasioning the retrial becomes final" is not wholly clear. The Speedy Trial Act Guidelines suggest that if a successful collateral attack is not appealed, then the action occasioning the retrial "becomes final" whenever the time for post-judgment motions expires (ten days after entry of order or judgment) or when the district court's ruling on such motions is entered, but if an appeal or a petition for certiorari is filed, the action occasioning the retrial should not be considered final until the appeal or petition has been disposed of and the district court receives the mandate of the court of appeals or the Supreme Court. Committee on the Administration of the Criminal Law, Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended 17–18 (rev. Dec. 1979) (hereinafter Guidelines). In the present case no appeal was filed. The order granting appellant's § 2255 motion was entered on September 27, 1979, and became final, at least for Speedy Trial Act purposes, ten days later on October 8, 1979. Thus, the time limit (60 days under the 1978 local speedy trial plan) began running on that date.

 Moreover, even though the government filed a superseding indictment,[18] we think that the applicable section of the Speedy Trial Act should be the same for both counts I and II. Such a unified treatment of the counts is provided for in 18 U.S.C. § 3161(i) (1976). "If the defendant pleads guilty to only some counts of an indictment or information pursuant to a plea agreement under which the other counts are to be dismissed, this provision makes it clear that withdrawal of the plea will establish a new time period with respect to all counts." Guidelines, *supra*, at 60.

We have carefully reviewed the district court's docket sheets and conclude that most of the days from October 8, 1979 (the date the 60-day time limit began running) to April 7, 1980 (the first day of trial) were chargeable as excludable delay under 18 U.S.C. § 3161(h) (1976 & Supp. III 1979), which is expressly incorporated by reference in 18 U.S.C. § 3161(e) (Supp. III 1979). *See* appendix A. The government had approximately 30 days left of the 60-day time limit and thus was not in violation of either the Speedy Trial Act or the 1978 local speedy trial plan.

## II. *Judgment of Acquittal*

Appellant next argues that the district court erred in failing to grant appellant's motion for judgment of acquittal. Appellant argues that the government failed to sustain its burden of proving sanity beyond a reasonable doubt.[19] We disagree.

Each of the three expert witnesses who testified at the trial agreed that appellant was a compulsive or pathological gambler and that pathological gambling was an impulse disorder under the classification of disorders in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (3d ed. 1980) (hereinafter DSM–III). The expert witnesses disagreed about whether pathological gambling was a "mental disease or defect" as

---

17. As discussed in note 14 *supra*, the retrial provision is probably controlling. In any event, the date is the same under both sections. *Compare* E.D.Mo. app. § 5(b) (1978), *with id.* § 5(c).

18. Using the superseding indictment timetable, we calculate that the government was still within the 60-day time limit. Of the 56 days from the first arraignment (June 2, 1978) to the day count II was dismissed (July 28, 1978), 11 days were excludable delay days (defense motions); the time limit was tolled from July 28, 1978 to October 19, 1979 (the second arraign-

ment). 18 U.S.C. § 3161(h)(6); E.D.Mo.R. app. § 5(d)(3) (1978). The days from October 19, 1979 through March 24, 1980 were excludable delay days (defense motions, psychiatric exams) (*see* appendix A). The government used 45 days in 1978 and 12 days in 1980 (March 25 to April 7), for a total of 57 days. Thus, under this calculation, the government had 3 days to spare.

19. Appellant does not argue on appeal that he was mentally incompetent to stand trial.

used in the ALI (American Law Institute) Model Penal Code test adopted by this circuit in *United States v. Frazier*, 458 F.2d 911 (8th Cir. 1972), and whether appellant lacked "substantial capacity . . . to conform his conduct to the requirements of the law." *Id.* at 918, *citing* ALI, Model Penal Code § 4.01 (Final Draft 1962).

Dr. Robert L. Custer, Chief of Treatment Services, Mental Health and Behavioral Sciences Division, Veterans Administration, is a psychiatrist who specializes in pathological gambling. Dr. Custer testified on behalf of the defense that he had examined appellant and had diagnosed him as a pathological gambler. Dr. Custer then explained the symptoms and characteristics of a pathological gambler. Dr. Custer concluded that in his opinion appellant could appreciate the wrongfulness of his conduct but that he could not conform his conduct to the requirements of the law. On cross-examination, Dr. Custer indicated that the term "disorder" was the only term used by the American Psychiatric Association and probably included "mental disease or defect."

Dr. David Reuterfors, a staff psychologist at the United States Medical Center for Federal Prisoners in Springfield, Missouri, and Dr. Robert B. Sheldon, Chief of Psychiatry and Forensic Psychiatry at the federal Medical Center, testified on behalf of the government. They had examined appellant and agreed with Dr. Custer's pathological gambling diagnosis. They also agreed that pathological gambling is an impulse disorder, but testified that in their opinion pathological gambling is not a mental disease or defect and, therefore, appellant did not suffer from any mental disease or defect.

"A criminal defendant is presumed sane, but the introduction of evidence of insanity dispels the presumption and subjects the prosecution to the burden of proving sanity beyond a reasonable doubt." *United States v. Dresser*, 542 F.2d 737, 742 (8th Cir. 1976) (citations omitted), *citing Davis v. United States*, 160 U.S. 469, 486–88, 16 S.Ct. 353, 357–58, 40 L.Ed. 499 (1895). Assuming the evidence of insanity offered by the defense was sufficient to shift the burden of proving appellant's sanity to the government,[20] we conclude without hesitation that the government produced sufficient evidence to allow the jury to find that appellant was sane beyond a reasonable doubt and that, therefore, the submission of the insanity question to the jury was proper.[21] *United States v. Dresser, supra*, 542 F.2d at 742; *United States v. Thomas*, 536 F.2d 274, 276 (8th Cir. 1976), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1270, 55 L.Ed.2d 784 (1978).

As part of his attack on the sufficiency of the government's evidence of sanity, appellant challenges the qualifications of both of the government's expert witnesses. Appellant argues that the district court erred in permitting Dr. Reuterfors to testify as an expert because he had not received his doctorate degree during most of the time he examined appellant and because he had had *no prior clinical experience* with pathological gamblers. Appellant similarly challenges the admissibility of Dr. Sheldon's testimony on the grounds that Dr. Sheldon had limited clinical experience with pathological gamblers and no specialized knowledge about pathological gambling. We disagree.

Appellant seeks to apply a too demanding and too narrow test for qualification as an expert witness.

The broad and generally stated test for determining the qualifications of a given witness to testify as an expert is whether

---

**20.** The government in its brief apparently concedes that the defense established a prima facie case of insanity. Brief of Appellee at 32. In view of our disposition of the sufficiency of the government's evidence of sanity, we need not address the adequacy of the evidence produced by the defense.

**21.** "Insanity is a jury question unless a reasonable [person] viewing the facts in the light most favorable to the government must necessarily possess a reasonable doubt as to the defendant's sanity." *United States v. Dresser, supra*, 542 F.2d at 742 n.8, *citing Dusky v. United States*, 295 F.2d 743, 755 (8th Cir. 1961), *cert. denied*, 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962).

his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth. The determination of this preliminary question is left to the broad discretion of the trial court and while its resolution will not ordinarily be disturbed, it is not inviolate and may be reversed if this court is convinced that it was "manifestly erroneous" and a clear abuse of discretion.

. . . . .

Acceptance of an expert's qualifications cannot depend on his precise skill or background in a particular profession or industry. If the subject matter ... falls within a person's experience in or overall knowledge of a specialized skill ..., this is sufficient to qualify the witness as an expert.

*Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857–58 (8th Cir. 1975) (citations omitted). In *Holmgren* this court held that a proposed expert witness need not have actually manufactured or previously designed machinery to understand principles of safe design; it was sufficient that the subject of safe design was within the proposed expert's experience in or overall knowledge of engineering. *Id.* at 858.

■ Here, Dr. Reuterfors satisfied all the requirements of his doctorate degree program in September 1979, before he examined appellant, but had not yet received his diploma. He received his diploma during the fall commencement exercises in December 1979. Under these circumstances, the lack of a doctorate degree should not in itself disqualify Dr. Reuterfors as an expert witness. *Cf. Tank v. Commissioner*, 270 F.2d 477, 486 (6th Cir. 1959) (absence of certificates or memberships); *see also Jenkins v. United States*, 113 U.S.App.D.C. 300, 307 F.2d 637, 642–46 (1962).

■ Nor do we agree that a lack of clinical experience with pathological gamblers or a lack of specialized knowledge about pathological gambling should necessarily disqualify either Dr. Reuterfors or Dr. Sheldon as expert witnesses. Appellant would apply a test for qualification as an expert witness that is too specialized. According to the trial testimony, the incidence of pathological gambling is relatively rare and the classification of pathological gambling as a distinct mental disorder is relatively recent. It is sufficient that the subject of pathological gambling is within the witnesses' specialized knowledge of psychology or psychiatry. *See Holmgren v. Massey-Ferguson, Inc., supra,* 516 F.2d at 858. In any case, we note that Dr. Reuterfors and Dr. Sheldon did not testify as experts on pathological gambling but as psychological or psychiatric experts. We find no abuse of discretion in the district court's admitting their testimony in evidence.

■ Appellant further argues that Dr. Sheldon incorrectly stated the requirements of the ALI test for legal responsibility, as adopted by this circuit in *United States v. Frazier, supra,* 458 F.2d at 918. Dr. Sheldon incorrectly stated that, under the ALI test, an individual must lack the substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law. The correct formulation of the ALI test is in the disjunctive. *Id.* We find no reversible error in the present circumstances. Defense counsel objected to Dr. Sheldon's testimony on the grounds that his opinion improperly invaded the province of the jury, not because Dr. Sheldon incorrectly stated that ALI test. Defense counsel did explore the fact that Dr. Sheldon misstated the ALI test, but made no specific objection or request for a correct statement of the ALI test. The district court in the instructions to the jury correctly stated the ALI test. We note that Dr. Sheldon specifically testified that, in his opinion, appellant was suffering from no mental disease or defect at the time of the alleged offense and that appellant had the substantial mental capacity to appreciate the wrongfulness of his acts and to conform his conduct to the requirements of the law. Dr. Sheldon's testimony thus addressed each part of the ALI test.

Moreover, the fact that Dr. Sheldon misunderstood (or at least misstated) the requirements of the ALI test really affects his credibility as an expert witness rather than his qualifications as such. Any "weakness in the underpinnings of such [expert] opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony." *Polk v. Ford Motor Co.,* 529 F.2d 259, 271 (8th Cir.), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). Similarly, "[c]omparisons between [the] professional stature [of the government's expert witnesses] and the stature of witnesses for an opposing party may be made by the jury, if it becomes necessary to decide which of two conflicting opinions to believe." *United States v. Barker,* 553 F.2d 1013, 1024 (6th Cir. 1977).

### III. *Refusal to Subpoena a Defense Witness*

Appellant next argues that the district court erred in refusing to subpoena his former wife Sharon Barry as a defense witness pursuant to Fed.R.Crim.P. 17(b).[22] Appellant argues that Ms. Barry would have testified that appellant's gambling severely disrupted their married life. A "disrupted family or spouse relationship" caused by gambling is one of the diagnostic criteria of pathological gambling. DSM–III, *supra,* at 292–93. Appellant thus argues that the presence of Ms. Barry was necessary to

adequately present his insanity defense. We disagree.[23]

Compulsory process under Fed.R. Crim.P. 17(b) is not an absolute right but, like many other trial decisions, is a matter committed to the sound discretion of the trial court.[24] *E. g., United States v. Morris,* 451 F.2d 969, 971 (8th Cir. 1971); *Slawek v. United States,* 413 F.2d 957, 960 (8th Cir. 1969); *Terlikowski v. United States,* 379 F.2d 501, 508 (8th Cir.), *cert. denied,* 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967). We find no abuse of discretion here. Appellant testified without contradiction and at some length about his personal and employment history, specifically his unsatisfactory marital relationships and three divorces. Moreover, it was undisputed that gambling had severely disrupted appellant's married life and that appellant was a pathological gambler. Under these circumstances, we agree with the district court that Ms. Barry's testimony about her married life with appellant would have been repetitive and cumulative and therefore was not necessary to the presentation of an adequate defense.

### IV. *Instructions*

Appellant next argues that the district court erred in giving certain instructions to the jury. First, appellant argues that instructions #9 and #13 as given were confusing, misleading and contradictory. Instructions #9 and #13 [25] contained the

---

22. Fed.R.Crim.P. 17(b) provides in part:
 The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

23. Despite the statement to the contrary in the government's brief, Brief of Appellee at 35, a defense motion to subpoena witnesses and the order of the district court granting the motion in part and denying the motion in part, *United States v. Gilliss,* No. 78–101–CR–(4) (E.D.Mo. Mar. 26, 1980) (Hungate, J.) (order), are noted on the district court's docket sheets and are included in the designated record on appeal (pp. 68–70).

24. *Cf. United States v. Barker,* 553 F.2d 1013, 1019 (6th Cir. 1977) (more limited discretion of trial court); *accord, Welsh v. United States,* 404 F.2d 414, 417–18 (5th Cir. 1968); *Greenwell v. United States,* 115 U.S.App.D.C. 44, 317 F.2d 108, 110 (1963).

25. Instruction #9 provided:
 Two essential elements are required to be proved in order to establish the offense charged in the indictment:
 *First:* The act or acts of transporting, or aiding and abetting or causing the transportation of a person in interstate commerce, as charged in the indictment; and,
 *Second:* Doing such act or acts knowingly and willfully, and while such person was unlawfully seized or confined or inveigled or kidnapped or carried away, and held for ransom or reward or otherwise, as charged.

**1280**

elements of each offense and are based upon those set forth in 2 E. Devitt & C. Blackmar, Federal Jury Practice & Instructions §§ 43.06, 45.05 (3d ed. 1977) (hereinafter Devitt & Blackmar). Appellant argues that the district court erred in refusing to include in these instructions the burden of proof "tail" [26] and a statement of the insanity defense.[27] We disagree.

■■■■ "A defendant is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request is entered." *United States v. Brown*, 540 F.2d 364, 380 (8th Cir. 1976). A defendant, however, is not entitled to an instruction in a particular form. "Even if the requested instruction is proper and in form suitable for use by the court, the court retains discretion in framing the instruction; it is therefore sufficient that the charge to the jury adequately and correctly covers the substance of the requested instruction." *Id.* We are satisfied, upon an examination of the instructions taken as a whole, that the instructions given by the district court adequately advised the jury of the essential elements of the offenses charged and the burden of the government to prove each element of the offenses charged, including the sanity of the defendant at the time of the commission of the offenses charged, beyond a reasonable doubt. Instead of incorporating the burden of proof and insanity defense instructions in the instructions on the elements of the offenses (*see* note 25 *supra*), the district court

gave the burden of proof and insanity defense instructions separately.

Second, appellant argues that the district court erred in refusing to modify the insanity defense instruction to include the term "disorder" in addition to "mental disease or defect." Appellant contends that contemporary psychiatric practice uses the term "mental disorder" rather than "mental disease or defect." Appellant stresses that Dr. Custer, the expert witness for the defense, repeatedly characterized pathological gambling as a "disorder," while the government's expert witnesses expressly testified that pathological gambling was not a "mental disease or defect." Appellant argues that the insanity instruction as given to the jury was confusing, misleading and prejudicial.

■■■ We decline appellant's invitation to evaluate the implications of an apparent lack of congruity between the terminology presently used by the American Psychiatric Association and that used in the ALI Model Penal Code, as adopted by this circuit in *United States v. Frazier, supra*, 458 F.2d at 918. The instruction as given here substantially follows the instruction specifically approved in *Frazier* and set forth in 1 Devitt & Blackmar, *supra*, § 14.17. While not a model of drafting, we find no error in the instruction as given. *See Government of Virgin Islands v. Fredericks*, 578 F.2d 927, 930–33 (3d Cir. 1978); *United States v. Gay*, 522 F.2d 429, 433 (6th Cir. 1975). *But see United States v. Brawner*, 153 U.S.App.D.C.

---

Instruction # 13 provided:
Three essential elements are required to be proved beyond a reasonable doubt, in order to establish the offense charged in Count II of the indictment.
*First:* that the motor vehicle described in the indictment was stolen.
*Second:* that the motor vehicle described in the indictment was transported by defendant in interstate commerce.
*Third:* that at the time the defendant transported the motor vehicle in interstate commerce, he well knew that it was stolen.

26. The burden of proof "tail" reads as follows:
As stated before, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime charged; the law never imposes upon

a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

27. Instructions # D and # E proposed by the defense included the following statement of the insanity defense:
Additionally, under the evidence in this case, in order to convict the defendant you must be convinced beyond a reasonable doubt that he was sane at the time of the alleged offense, that is, that he was so far free from mental disease or defect that he had substantial capacity to both appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.

1, 471 F.2d 969, 983–84 (1972) (banc) (holding that the *McDonald* definition should be retained to cure the "inherent ambiguity" of the terms "mental disease or defect"), *citing McDonald v. United States*, 114 U.S. App.D.C. 120, 312 F.2d 847, 851 (1962) (banc).

■ The terms "mental disease or defect" are used inclusively in the instruction. Any mental disease or defect which deprives the defendant of the substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law will relieve him of legal responsibility. The only exception is that any abnormality manifested only by repeated criminal or otherwise antisocial conduct is not a mental disease or defect. *See United States v. Thomas, supra*, 536 F.2d at 277 (approving ALI, Model Penal Code § 4.01(2) (Final Draft 1962)); *see also United States v. Austin*, 533 F.2d 879, 885 (3d Cir. 1976), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 746, 50 L.Ed.2d 756 (1977); *Blake v. United States*, 407 F.2d 908, 915–16 (5th Cir. 1969). *But see Wade v. United States*, 426 F.2d 64, 73 (9th Cir. 1970) (banc), *citing United States v. Smith*, 404 F.2d 720, 727 & n.8 (6th Cir. 1968) (disapproving § 4.01(2)). Here, the expert witnesses agreed that appellant had a mental disorder, but disagreed sharply over whether appellant was suffering from a mental disease or defect. Resolution of this question was properly left to the jury.

## V. *Sentencing*

Appellant lastly argues that the district court violated due process in sentencing him after the second trial to a term of imprisonment greater than twenty years and without specifying that he would be eligible for parole consideration after three years pursuant to 18 U.S.C. § 4205(b)(1). *See Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Stacey*, 571 F.2d 440, 444 (8th Cir. 1978). We agree in part and vacate the sentence imposed for count I and remand for resentencing.

As noted above, in the first sentence following the guilty plea the district court imposed a sentence of twenty years, modified to provide for consideration for parole after three years pursuant to 18 U.S.C. § 4205(b)(1) for kidnapping (count I); count II was dismissed. Following the successful collateral attack, the government reinstated the original two-count indictment, appellant was tried and found guilty on both counts, and the district court [28] sentenced appellant to twenty years on count I and three years on count II, to be served consecutively, without specifying the particular statute under which parole was to be available.[29]

■ In *North Carolina v. Pearce*, the Supreme Court held that the imposition of a more severe sentence upon reconviction following a successful appeal or collateral attack may violate due process. 395 U.S. at 723–24, 89 S.Ct. at 2079–80. The Court emphasized that due process requires

> that vindictiveness [30] against a defendant for having successfully attacked his

---

**28.** *See* note 4 *supra.*

**29.** When the district court does not specify the particular statute which controls parole eligibility, presumably 18 U.S.C. § 4205(a) is applicable:

> (a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

Thus, following his resentencing appellant would be eligible for parole after serving 7⅔ years in prison (6⅔ years of the 20-year sen-

tence on count I, plus 1 year of the 3-year sentence on count II). *See, e. g., Goode v. Markley*, 195 U.S.App.D.C. 391, 603 F.2d 973, 976–77 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980).

**30.** Appellant does not allege that the second district judge acted out of actual vindictiveness in sentencing appellant.

> However, because *Pearce* created a "prophylactic rule to ensure 'that vindictiveness against a defendant for having successfully attacked his first conviction ... [would] play no part in the sentence he receives after a new trial ...' and to ensure that the apprehension of such vindictiveness does not 'de-

first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.

*Id.* at 725, 89 S.Ct. at 2080. In *Blackledge v. Perry*, the Supreme Court extended the due process principles set forth in *Pearce* to prosecutorial conduct as well. 417 U.S. at 27–29, 94 S.Ct. at 2102.

■ We find no due process violation in appellant's reindictment for count II. "[A] prosecutor may, without explanation, refile charges against a defendant whose bargained-for guilty plea to a lesser charge [or to a reduced number of charges] has been withdrawn or overturned on appeal [or collateral attack], provided that an increase in the [severity or number of the] charges is within the limits set by the original indictment." *Hardwick v. Doolittle*, 558 F.2d 292, 301 & n.8 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978). Here, count II was charged in the original indictment but was later dismissed by the government following appellant's

plea of guilty to count I (the more serious kidnapping charge), evidently as a result of plea negotiations.

After that plea was vacated the situation reverted to the pre-plea stage. The fact that the [additional] charge was foregone as part of the plea arrangement does not mean that the Government would have prosecuted only the [kidnapping] charge originally if not guilty pleas had been entered as to both. Here we have a situation where there has been a major change other than just an appeal [or collateral attack]—the defendant had now pleaded not guilty to both charges. The decision to prosecute him for the [additional] offense can on its face be explained in terms other than vindictiveness because of a successful appeal [or collateral attack]. There is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain.

*United States v. Anderson*, 514 F.2d 583, 588 (7th Cir. 1975), *cited with approval in United States v. Williams*, 534 F.2d 119, 122–23 (8th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976).

■ We find no due process [31] violation in the imposition of a three-year *consecutive* sentence for count II. Under the

---

ter a defendant's exercise of the right to appeal or collaterally attack his first conviction, . . .' " the defendant need not specifically allege vindictiveness in asserting that the second sentence was wrongfully imposed. It is the appearance of vindictiveness, not vindictiveness in fact, that is the basis of *Pearce*. *United States v. Tucker*, 581 F.2d 602, 605 n.4 (7th Cir. 1978) (sentencing), *citing United States v. Alvarado-Sandoval*, 557 F.2d 645, 645 (9th Cir. 1977) (per curiam) (prosecutorial vindictiveness); *United States v. Floyd*, 519 F.2d 1031, 1034–35 (5th Cir. 1975) (sentencing). *But cf. Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (prosecutorial vindictiveness) ("The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, . . . but in the danger that the State might be retaliating against the accused for lawfully attacking his conviction."); *United States v. Andrews*, 612 F.2d 235, 238–41 (6th Cir. 1979) (prosecutorial vindictiveness).

Whatever may be the appropriate standard for a prima facie case of prosecutorial vindictiveness, *see United States v. Andrews, supra*, 612 F.2d at 238–41; *United States v. Thomas*, 617 F.2d 436, 438 n.1 (5th Cir. 1980), here appellant has made out a prima facie case of retaliatory sentencing by showing that a more severe sentence was imposed upon reconviction. In the absence of adequate justification for the increased sentence, as required by *Pearce*, appellant has thus demonstrated a basis for relief.

**31.** Appellant does not attack the consecutive sentences on the basis of double jeopardy. "It is true that constitutional problems may arise if a court imposes multiple punishments for the same offense. . . . A court may, however, in a proper case impose separate and consecutive sentences for violation of different statutory provisions in a single transaction." *United States v. Mathis*, 579 F.2d 415, 418 (7th Cir. 1978) (citations omitted).

present, circumstances, appellant cannot complain that this sentence was a retaliatory penalty because count II was not part of the first trial and no sentence on count II was imposed. We distinguish *United States v. Mathis*, 579 F.2d 415, 419–20 (7th Cir. 1978), in which the court found that the imposition of consecutive sentences of six years for robbery of government property (18 U.S.C. § 2112 (count II)) and three years probation for unarmed assault or interference with a federal agent (18 U.S.C. § 111 (count I)) upon reconviction following a successful appeal violated due process. After entering a guilty plea, the defendant had received concurrent sentences of eight years imprisonment on the robbery count and three years on the assault count. The defendant on appeal argued that "the change in sentence from concurrent to consecutive imposed upon him 'the possibility of a longer period of incarceration than he faced under his previous sentence.'" *Id.* at 419. Unlike the defendant in *Mathis*, appellant herein did not receive co secutive sentences, instead of concurrent sentences, on the same counts upon reconviction. Appellant's consecutive sentence was imposed for an additional count, which was properly reinstated and prosecuted. *See* text *supra.*

■ Appellant also argues that the district court's failure to specify parole eligibility under 18 U.S.C. § 4205(b)(1)[32] in its sentence on count I following appellant's reconviction made that sentence more severe than the sentence imposed following the guilty plea. Appellant contends that because the record of the sentencing proceeding following his reconviction discloses that the district judge had no "objective

information concerning identifiable conduct on the part of the defendant occurring after the time of the original proceeding," as required by *North Carolina v. Pearce, supra*, 395 U.S. at 726, 89 S.Ct. at 2081, the more severe sentence violates due process. We agree.

We conclude that appellant's resentencing to twenty years with parole eligibility controlled by 18 U.S.C. § 4205(a) (*see* note 29 *supra*) was a harsher sentence than his previous sentence pursuant to 18 U.S.C. § 4205(b)(1). This question was expressly addressed in *United States v. Hawthorne*, 532 F.2d 318, 322–25 (3d Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976).[33] *See also United States v. Mathis, supra*, 579 F.2d at 419; *United States v. Barash*, 428 F.2d 328, 331 (2d Cir. 1970) (absent justification, *Pearce* prohibits an increase in the punishment imposed after a conviction on retrial regardless of the form of punishment, whether it is imprisonment, suspended sentence with probation or fine), *cert. denied*, 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971). Appellant's first sentence provided that he would be eligible for parole consideration after serving three years. *United States v. Gilliss*, No. 78–101–CR–(4) (E.D.Mo. Feb. 22, 1979) (modification of sentence pursuant to Fed.R.Crim.P. 35 motion). Appellant's second sentence made no similar provision and as a consequence appellant would have been eligible for parole consideration only after serving one-third of his total sentence (or after 7⅔ years, *see* note 29 *supra*) pursuant to 18 U.S.C. § 4205(a). Thus, the district court's failure to resentence appellant to parole

32. 18 U.S.C. § 4205(b)(1) provides:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, . . .

33. The court in *Hawthorne* was confronted with a first sentencing pursuant to 18 U.S.C. § 4208(a)(2) (now 18 U.S.C. § 4205(b)(2)), under which the defendant was eligible for parole consideration at the discretion of the Board of Parole (now the Parole Commission) prior to the completion of one-third of the sentence, and a second sentencing pursuant to 18 U.S.C. § 4202 (now 18 U.S.C. § 4205(a)). Unlike the defendant in *Hawthorne*, appellant was eligible for parole consideration after a definite period, three years.

eligibility after three years deprived him of the possibility of earlier parole eligibility.

North Carolina v. Pearce requires that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 726, 89 S.Ct. at 2081.

 Here the district court articulated the following reasons for imposing a more severe sentence: the twenty-year sentence was the same sentence imposed originally, count II was not part of the first trial, the four days of trial testimony, and the benefit of expert testimony. We conclude that these reasons do not meet the requirements set forth in Pearce to justify the imposition of a more severe sentence. None of these reasons are based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id. In particular, we note that additional testimony[34] that "merely describes in further detail the crime in which the defendant participated and the extent of this involvement ... does not meet the Pearce standards for the reason that only 'intervening detrimental deportment' on the part of the defendant may justify a harsher sentence." United States v. Tucker, 581 F.2d 602, 606 (7th Cir. 1978) (citations omitted); see also United States v. Cunningham, 529 F.2d 884, 888 (6th Cir. 1976) (Pearce does

not allow increased sentences on retrial based upon "amplified knowledge" about a defendant's criminal activity which occurred before the first trial). Cf. United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (perjury by the defendant will support increased sentence).

For these reasons we vacate the sentence imposed on count I and remand[35] this case to the district court for the limited purpose of imposing a sentence on count I no more severe than that originally imposed. See United States v. Tucker, supra, 581 F.2d at 607–08 (limited remand); United States v. Hawthorne, supra, 532 F.2d at 325 (limited remand).

Accordingly, the convictions are affirmed, the sentence imposed on count I is vacated, and the case is remanded to the district court for resentencing consistent with this opinion.

## APPENDIX A

| Sept. 22, 1979 | order vacating judgment of conviction | |
| Oct. 8, 1979 | order becomes final; time limit begins to run (1-day delay) | § 3161(e), (i) |
| Oct. 9–12, 1979 | defense motions to reduce bond | § 3161(h)(1)(F) |
| Oct. 12–19, 1979 | defense motions to suppress evidence and statements, to dismiss indictment, for discovery | § 3161(h)(1)(F) |
| Oct. 19–24, 1979 | motion by government for psychiatric examination (competency) | § 3161(h)(1)(A) |
| Oct. 24 – Nov. 19, 1979 | psychiatric examination, defendant transportation | § 3161(h)(1)(A), (H) |
| Nov. 19 – Dec. 26, 1979 | motion by government for further psychiatric examination | § 3161(h)(1)(A) |

34. Here, because appellant originally entered a guilty plea, the facts were not as fully developed at the guilty plea proceeding as they were later during the trial.

35. There is also authority supporting correction or modification of the sentence by the appellate court rather than remanding to the district court for resentencing. "Where a sentence has been imposed in violation of a constitutional or statutory right, the appellate court may in a proper case 'correct the sentence rather than remanding the case for the execution of this ministerial act.'" United States v. Mathis, supra, 579 F.2d at 420, citing United States v. Mazzei, 521 F.2d 639, 646 (3d Cir.) (banc), cert. denied, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

| | | |
|---|---|---|
| Dec. 26, 1979 – Jan. 24, 1980 | additional defense motions filed | § 3161(h)(1)(F), (J) |
| Jan. 24 – Feb. 5, 1980 | suppression hearing; motions taken under submission | § 3161(h)(1)(F), (J) |
| Feb. 5–20, 1980 | 15-day delay | |
| Feb. 20 – Mar. 5, 1980 | defense motion to transfer place of confinement | § 3161(h)(1)(F) |
| Mar. 5–24, 1980 | physical examination and recommendation of proper medical treatment; defense motions for subpoenas | § 3161(h)(1)(A), (F) |
| Mar. 24 – April 7, 1980 | 14-day delay (April 7, 1980 is first day of trial) | |